**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Newton SAMS a/k/a Adolphus John**
**Sams, Defendant-Appellant.**

**No. 72-1781.**

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1972.

Donald W. Matthews, Jacksonville, Fla. (court appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Peter L. Dearing, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

The principal, and only serious, contention made by Sams on his appeal from a conviction and sentence for falsely forging a United States Government check in violation of Title 18 U.S.C.A. § 495, deals with the manner in which the trial court permitted the accused to exercise his peremptory challenges during the empanelling of the jury.

The issue arose in the following manner: The trial judge was a visiting judge designated to sit in the Tampa Division of the Middle District of Florida. Without prior announcement to counsel the trial judge utilized a method of selecting a jury that varied from the local custom, although we are not told precisely on this record what the local custom was. The method utilized was as follows: The first twelve prospective jurors were summoned to the jury box and then examined by the court for qualification. Then, both sides were allowed to inquire of the jurors touching on certain specified questions. Thereafter, the following transpired:

THE COURT:

Thank you. Now, we'll proceed with the peremptory challenges.

MR. DEARING:

Your Honor, the Government exercises no challenges. We would be happy to have this jury try the case.

MR. MATTHEWS:

Your Honor, at this time counsel for defendant will ask the Court to excuse Mr. Davies.

THE COURT:

All right. You're excused, Mr. Davies.

THE CLERK:

That's No. 14.

THE COURT:

No. 14.

THE CLERK:

Do you have any others *at this time*, Mr. Matthews?

MR. MATTHEWS:

*Not at this moment, no.*

THE MARSHAL:

No. 34.

THE CLERK:

Herbert L. Hoffman.

MR. HOFFMAN:

Present.

THE MARSHAL:

Have a seat here, please, sir. Following interrogation by the court as to the qualifications of Mr. Hoffman, the following dialogue occurred:

THE COURT:

Thank you, Mr. Hoffman.

Does the Government have any peremptory challenges?

MR. DEARING:

No challenges, Your Honor.

THE COURT:

The defendant?

MR. MATTHEWS:

Yes, sir, Your Honor. At this time counsel for the defendant would like to excuse No. 19. That's Mrs.—

THE COURT:

Wait a minute. You were asked if you had any other challenges.

MR. MATTHEWS:

As to peremptory? *At that time,* Your Honor—

THE COURT:

At that time the Clerk asked you whether you wanted to exercise any others and the ones that you have passed you can't go back to.

MR. MATTHEWS:

Very well, Your Honor. I'm sorry. I misunderstood the question. At this time, the defendant would excuse Mr. Hoffman.

THE COURT:

All right. Mr. Hoffman, you are excused.

THE MARSHAL:

No. 88.

THE CLERK:

Louise G. White. (Emphasis added).

It will readily appear from this proceeding that Sams's counsel actually ended up by being permitted to exercise only two peremptory challenges. He contends, therefore, that this was a direct violation of Rule 24 of the Federal Rules of Criminal Procedure, which provides in Section (b) . . . "If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges . . . ."

He also contends that the curtailment of his privilege to exercise his challenges amounts to a violation of the guarantees of the Sixth Amendment providing for trial by jury.

The government replies, first, that the Supreme Court has held that the number of, and the manner of exercising, peremptory challenges does not go to the constitutional guaranty of a right to trial by jury, and, second, that the courts have held that there is no specific method which is recognized by the courts as being required to exercise the admitted right to have ten challenges in a felony case; that, in other words, this is another one of those procedural rights in the vindication of which the trial court has "broad discretion." Finally, the government says that Sams did not take the necessary curative action to protect any error committed by the trial court for the purpose of appeal.

We recognize that the Supreme Court has said, "There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured." Stilson v. United States, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L. Ed. 1154. It seems clear, therefore, that unless, since the Court's decision in Stilson some intervening decision has emerged, the granting and exercise of the right to peremptory challenges must be tested by the rules, which of course, have the effect of statutory law. We find no such case.

The United States points to the case of St. Clair v. United States, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936, which it contends controls this case since in St. Clair the Supreme Court expressly held that there was no error in the conduct of a trial in which the procedure was similar to that followed by the trial court here. In St. Clair, however, the local district court rule had expressly adopted the state's statute with respect to the method of exercising peremptory challenges. The rule was on the books for all to see. We would not attempt, of course, to say that were there a similar situation presented in the present case St. Clair would not be applicable because of the long lapse of time, even though during the years between 1894 and 1972 the Court has devoted a great deal of judicial time resulting in making trial by jury a much more meaningful part of our judicial system.

The difference between this case and St. Clair, however, is apparent for two reasons. The first is that the trial court here did not follow a standing rule of the district, by which all counsel practicing there were bound, and presumably on actual notice; the second is that counsel for Sams was predictably misled at the time he refrained from making additional challenges by the question put to him by the clerk.

First, we must note that counsel for Sams was taken by surprise when he was told by the trial court that he was not to be permitted to strike one of the original twelve jurors after he had answered the clerk's question as to whether he had any other strikes after excluding Mr. Davies. The reason for his surprise is obvious because after striking Mr. Davies—No. 14—the clerk said, "Do you have any others *at this time,* Mr. Matthews?" Thereupon counsel replied, *"Not at this moment,* no." Far from indicating that counsel meant to waive any right he may have had to exercise his remaining nine peremptory challenges, the indications are precisely the opposite. The clerk's inquiry clearly indicated that he might have an opportunity *at*

*another time* to exercise these challenges —and in no way limiting such challenges to persons who subsequently took the place of the single challenged juror. Counsel showed his surprise when, after venireman Hoffman had taken the place of Mr. Davies and the court asked the defendant if he had any peremptory challenges, counsel stated that he would like to excuse No. 19, a member of the original twelve veniremen who had not previously been challenged. Thereupon, the court said, "Wait a minute. You were asked if you had any other challenges." Of course, that is not precisely what counsel had been asked previously by the clerk. As we have indicated, the clerk said, "Do you have any others at this time?" So, in answering the court Mr. Matthews said, "As to peremptory? *At that time*, Your Honor." This, it seems to us, was clearly an effort by counsel to correct the court's statement, "You were asked if you had any other challenges." Counsel undertook to tell the court that the total statement included the words, "At that time." Nevertheless, the court brought the discussion to an end by saying, "At that time the clerk asked you whether you wanted to exercise any others [as we have pointed out this is not a complete statement] and the ones that you have passed you can't go back to." Thereupon counsel challenged Mr. Hoffman, the only one of the twelve then qualified as to whom he had the right to exercise a challenge under the court's ruling. Mr. Hoffman was excused and Louise G. White was called as the next person on the list.

Neither the statutes nor the Federal Rules of Criminal Procedure, other than providing that a defendant in a felony case is entitled to ten peremptory challenges, spells out the manner in which the trial court is to handle the actual empanelling of the jury. Thus we recognize the continuing vitality of the Supreme Court's statement in the St. Clair case, supra, that "the authority of the circuit courts [now District Courts] of the United States to deal with the subject of impaneling juries in criminal cases was recognized in Lewis v. United States [146 U.S. 379, 13 S.Ct. 136, 36 L.Ed. 1011,], subject to the condition that such rules must be adopted to secure all the rights of the accused." 154 U.S. 134, 148, 14 S.Ct. 1002, 1008. We note, however, that the Court proceeded to say. "Adhering to what was said in Pointer's case,—that any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of his right of peremptory challenge must be condemned. . . ."

This court has spoken on this subject fairly recently in a case in which the writer of this opinion participated, and in which we found that the method used by the trial court that was then up for consideration did not constitute an abuse of the discretionary power of the trial court in determining the proper method of empanelling a jury. It happens that in that case the system used, also said to have been different from what the lawyers in the Middle District of Florida were accustomed to, was so extremely different and so extremely more favorable to a person on trial for the commission of a felony, that following the study we have now made of the matter, it would seem like an *a fortiori* case. See United States v. Williams, 5 Cir., 1971, 447 F.2d 894.

It is difficult to conceive of a fairer method of giving the defendant an opportunity to make a full choice of the range of the venire of 32 persons (12 to serve, 10 subject to challenge by the defense, 6 subject to challenge by the prosecution, and 2 to be chosen by alternate strikes out of the remaining 4 to serve as alternates) than was used in the Williams case. It embodied the system whereby all 32 veniremen were initially qualified and were subjected to the *voir dire* by the court and counsel. Thus, before counsel made their first strike or peremptory challenge they had the full range of possibilities of all jurors who might conceivably sit on the case available to them for comparison. This court, emphasizing the wide discretion committed to the trial judges in the

methods employed to select juries, held that the system just outlined was "not demonstrated to have been erroneous." While we fully subscribe to this pronouncement by the court, it is wholly inapplicable to this case where the most limited use of the peremptory challenges resulted. Moreover, it turns out that the language quoted was not necessary to a decision of the case, because it was reversed on other grounds.

In the case before us we have an entirely different situation. Unaware of the system to be utilized by the trial court, and being aware of the provision in the Federal Rules of Criminal Procedure that he was entitled to ten peremptory challenges, and being asked by the clerk, who was conducting the proceedings, if he had any further challenges *at this time,* counsel answered, "No, not at this moment."

 We conclude that for the court thereafter to deny to the accused an opportunity to go back and challenge other members of the original twelve, thus having an opportunity to express a preference for taking a chance upon some juror whose qualifications had not yet been inquired of by the court by *voir dire,* exceeded the limits of judicial discretion in that it "prevent[ed] or embarrass[ed] the full, unrestricted exercise by the accused of his right of peremptory challenge." 154 U.S. 134, 148, 14 S.Ct. 1002, 1008.[1]

We find no cases in conflict with what we decide here. United States v. Mackey, 7 Cir. (1965), 345 F.2d 499 and Philbrook v. United States, 8 Cir. (1941), 117 F.2d 632 are distinguishable on their facts. Especially in light of Rule 24(b), a rule, of course, which was not in force at the time of the Supreme Court's decision in St. Clair, supra,[2] we conclude that the method here used by the trial court, which, as an ingredient thereof, caused the defense to be seriously limited in making the challenges to which the accused was *entitled* requires that the judgment be reversed. Such an error as to the proper empanelling of the jury must be noticed as plain error.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

1. We do not here reach the question as to the range of choices that may properly fall within the bounds of judicial discretion in the empanelling of a jury. In view of the extremely wide range, which, it appears to us, does have the effect of granting to some persons on trial a substantially better opportunity to pick a jury to their liking than does the system employed here, it would seem to be an appropriate subject of study for each district to undertake with a view towards achieving more uniformity with respect to the empanelling of juries.

2. It is noted that in St. Clair the court dealt only with the constitutional question. Here, we have the statutory provision guaranteeing the right to 10 peremptory challenges.