UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph BRYANT, John Cagnina, Terry Lee Alvarez, Defendants-Appellants.

No. 80–5810.

United States Court of Appeals,
Eleventh Circuit.

March 26, 1982.

---

Spain & O'Donnell, Donald Spain, John Lipinski, Miami, Fla., for Bryant and Cagnina.

William B. Plowman, Tampa, Fla., for Alvarez.

Lurana S. Snow, Asst. U. S. Atty., Fort Lauderdale, Fla., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before MORGAN, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellants Joseph Bryant, John Cagnina, and Terry Lee Alvarez were convicted by a jury of tampering with a vessel of the United States with the intent to injure or en-

danger the safety of the vessel in violation of 18 U.S.C. § 2275. On appeal they contend that § 2275 applies only to "commercial vessels" and not the private sailboat they were using, that the evidence was insufficient to sustain the convictions, and that the process by which defense counsel were required to exercise their peremptory challenges to the jury venire denied them a fair trial. We reject these arguments and affirm.

## I. Background

On the evening of January 16, 1980, the Coast Guard cutter UNIMAC was patrolling near the Bahamas when its radar picked up a vessel, later identified as the sailboat SCHERZO, approximately eight and one-half miles from the cutter and fifteen miles from Abaco Island in the Bahamas. After unsuccessfully attempting to contact the SCHERZO by radio, the UNIMAC approached the sailboat and endeavored to identify it with a searchlight. The SCHERZO's name and home port were not visible, but the boat was flying an American flag and was towing a dinghy.

At approximately 9:15 p.m. the UNIMAC established radio contact with the SCHERZO, and requested the SCHERZO's last port of call, next port of call, home port, the name of the master, and call sign. Someone aboard the SCHERZO answered that Nassau was the last port of call, Abaco Island was the next port of call, Tampa was the home port, and appellant Alvarez was owner of the vessel. The UNIMAC's lookout then observed three people moving on the deck of the SCHERZO, and the UNIMAC radioed to inquire if the boat was in trouble and in need of assistance. One of the persons on board the SCHERZO responded, "No, we're preparing for your boarding."[1] Subsequently the lookout saw one person in the water near the boat and no one on deck.

At approximately 9:45 p.m., as a four-man boarding party prepared to board the SCHERZO, a flare was fired from behind the sailboat and landed in the water. When the Coast Guard party boarded the SCHERZO, no one was on the ship. The party observed gasoline poured on the deck in the cockpit area, the fuel lines to the engines severed, a salt water line cut, and a valve open permitting water to flood the craft. The boarding party also noticed that the sails were set and helm tied down so that the boat would hold its course. When the boarding party entered the cabin, they found 106 bales of marijuana weighing over 3000 pounds.

Shortly thereafter, appellants were apprehended in the dinghy in the vicinity of the SCHERZO. Appellants were arrested and charged with conspiracy to import marijuana, possession of marijuana with intent to distribute and possession of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846, 951(a) and 963. Appellants also were charged with endangering the safety of the vessel under 18 U.S.C. §§ 2, 2275. The evidence at trial showed that appellants Alvarez and Cagnina owned the SCHERZO, which was licensed and registered in Tampa. Appellant Bryant testified that the three appellants had accepted an offer to transport marijuana from Jamaica to the Abaco Islands, but denied helping damage the SCHERZO and stated that he did not know which co-defendant did the damage. Bryant also testified that the flare went off by accident when appellant Alvarez mishandled the flare gun in the dinghy. The jury acquitted appellants of the three marijuana-related charges, but convicted them of the § 2275 charge.[2]

## II. The Crime Under § 2275

Title 18, United States Code, § 2275 states:

Whoever sets fire to any vessel of foreign registry, or any vessel of American registry entitled to engage in commerce with foreign nations, or to any vessel of the United States, or to the cargo of the

---

1. The Commander of the UNIMAC previously had decided to board the SCHERZO, but this decision had not yet been communicated to those on board the sailboat.

2. The trial court in its charge instructed the jury on the elements of aiding and abetting.

same, or tampers with the motive power or instrumentalities of navigation of such vessel, or places bombs or explosives in or upon such vessel, or does any other act to or upon such vessel while within the jurisdiction of the United States, or, if such vessel is of American registry, while she is on the high sea, with intent to injure or endanger the safety of the vessel or of her cargo, or of persons on board, whether the injury or danger is so intended to take place within the jurisdiction of the United States, or after the vessel shall have departed therefrom and whoever attempts to do so shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

Appellants urge that this statute proscribes only tampering with a "commercial vessel," [3] and not a private pleasure craft such as the SCHERZO. The government, on the other hand, asserts that § 2275 applies to "any vessel of the United States" [4] regardless of its design or actual use. We need not address whether § 2275 applies to non-commercial vessels used purely as pleasure craft, however, because after reviewing the statute and relevant legislative history, we find that § 2275 at least applies to any United States vessel engaged in commercial activity, and the SCHERZO was so engaged at the time at issue here.

Contrary to appellants' argument, several factors indicate that Congress did not intend to limit the protection of § 2275 only to "commercial vessels." First, the express language of the statute applies to "any vessel of the United States" and is in no way limited to solely commercial vessels. Where the language of the statute is clear, it is conclusive absent a clearly expressed congressional intent to the contrary. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)); *American Trucking Associations, Inc. v. ICC,* 659 F.2d 452, 458–59 (5th Cir. 1981); *Duncan v. Poythress,* 657 F.2d 691, 698 (5th Cir. 1981).[5]

Second, while the statute as a whole appears to require some commercial nexus with the vessel for the statute to apply,[6] prior judicial interpretations suggest this nexus is satisfied by any vessel actually engaged in, or capable of engaging in, commerce whether or not the vessel is designed as a "commercial" vessel. *See, e.g., Marchese v. United States,* 126 F.2d 671, 675 (5th Cir. 1942) (vessels which are available for use in foreign commerce come within statute despite current inactivity); *Bersio v. United States,* 124 F.2d 310, 313 (4th Cir. 1941), *cert. denied,* 316 U.S. 665, 62 S.Ct. 1033, 86 L.Ed. 1742 (1942) (the original purpose of the statute was to protect "the foreign commerce of the country and vessels *usable* as instrumentalities of that commerce ...") (emphasis added); *United States v. Martini,* 42 F.Supp. 502, 509 (S.D. Ala.1941) (statute protects vessels "actually

---

3. By "commercial vessel" we assume appellants mean a vessel designed and/or registered for commercial use.

4. 18 U.S.C. § 9 defines a "United States vessel" as any vessel "belonging in whole or in part to the United States or any citizen thereof, or any corporation created by or under the laws of the United States, or of any State, territory, District, or possession thereof."

5. The Eleventh Circuit, in the en banc case *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) adopted as precedent the decisions of the former Fifth Circuit.

6. For example, § 2275 derives almost verbatim from a statute originally passed in 1917. The title to this statute was "Injuring Vessels Engaged In Foreign Commerce," and its obvious purpose was to protect United States shipping during wartime. *Bersio v. United States,* 124 F.2d 310 (4th Cir. 1941). The statute, moreover, speaks of injuring the vessel "or her cargo," indicating the statute was directed toward cargo-carrying vessels. As noted in the text, however, we need not decide in this case whether the statute as reenacted in 1948 applies to any United States vessel regardless of its connection, or lack of it, with commercial activity, because the SCHERZO was carrying cargo at the relevant time. *Cf. Giugni v. United States,* 127 F.2d 786 (1st Cir. 1942) (statute applies to "any vessel of foreign registry" whether or not it is engaged in or usable for foreign commerce).

engaged or capable of being used in transporting men and material . . .").

■ We hold, therefore, that § 2275 at least encompasses any vessel engaged in, or capable of being used in, commerce whether or not the vessel was designed and/or registered as a commercial ship. We also conclude that, in light of appellant Bryant's testimony that he, Alvarez and Cagnina had accepted an offer to transport some 3000 pounds of marijuana from Jamaica to Abaco Island for profit, the SCHERZO was in fact engaged in commerce at the time of the acts in question and was subject to the protection of § 2275.

■ Appellant's second argument concerning § 2275 is that the statute does not apply to an owner who destroys his own ship. We find this argument equally unavailing. The Fifth Circuit, interpreting the predecessor to § 2275, has squarely held that the statute applies to acts of owners as well as other parties. *Marchese v. United States, supra*, at 675. *Accord, Giugni v. United States*, 127 F.2d 786 (1st Cir. 1942); *Bersio v. United States, supra*, at 314. Hence, the acts performed by appellants were within the ambit of the statute.

### III. Sufficiency of the Evidence

Appellants' second challenge to the conviction is that because the government could not produce evidence showing which of them performed the acts of tampering with the SCHERZO, the evidence was insufficient to convict any one of them. We disagree.

■■ In reviewing the sufficiency of the evidence an appellate court must uphold the judgment of the jury if, viewing the evidence in the light most favorable to the government, it is sufficient for a reasonable jury to find guilt beyond a reasonable doubt. *United States v. Davis*, 666 F.2d 195 at 201 (5th Cir. 1981). Here the appellants, in addition to being charged with the principal offense, were indicted on aiding and abetting under 18 U.S.C. § 2. To sustain a conviction of aiding and abetting, the prosecution must show "that the defendant asso-

ciated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1981); *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981). Although neither "mere presence" nor "mere flight" is sufficient to uphold a conviction for aiding and abetting, *e.g., Schwartz, supra*, at 463, *United States v. Reyes*, 595 F.2d 275 (5th Cir. 1979), presence or flight coupled with other evidence of guilt can be adequate to sustain the conviction. *See Schwartz, supra; United States v. Flores*, 564 F.2d 717 (5th Cir. 1977).

■■ The evidence here was sufficient for the jury to find each defendant guilty either directly or under an aiding and abetting theory. As to Alvarez, the evidence at trial showed he was both the master and part-owner of the SCHERZO, and according to Bryant's testimony was responsible for firing the flare which, had it landed on the gasoline-laden deck of the SCHERZO, would likely have caused considerable damage. The jury properly could have found that the discharge of the flare was not accidental but rather was an abortive attempt to ignite the gasoline on the SCHERZO's deck. Moreover, even in the absence of such an inference, our prior precedents indicate that in appropriate circumstances a jury is entitled to infer from the control of the ship and nature of the office that the master intentionally engaged in criminal conduct. *E.g., United States v. Sanchez*, 634 F.2d 938, 941 (5th Cir. 1981) (jury entitled to infer that captain of ship laden with contraband intentionally and willingly participated in drug conspiracy). Here the jury reasonably could have found from the extent of the damage that the sabotage of the SCHERZO could not have occurred without Alvarez's authorization and participation.

As to Bryant and Cagnina, the jury could have concluded that the extent of the damage, the relatively short time (less than 30 minutes) in which it was accomplished, and the failure of either man to request assist-

ance from the UNIMAC, coupled with their presence and flight, indicated a concert of action among the three men. In short, although the evidence was largely circumstantial, we find it sufficient for a reasonable jury to have found guilt beyond a reasonable doubt.

### IV. The Selection of the Jury

Appellants' final argument is that the trial court's procedure for selecting the jury denied them their due process right to a fair trial. The trial court allowed defendants ten peremptory challenges which they could exercise as a group or apportion by agreement. The court explained that the prosecution would exercise its challenges first, then tender the jury to the defendants who would exercise their challenges and tender the jury back to the government. This process of challenge-and-tender would continue until each side was satisfied with the jury or had exhausted its challenges. The defendants, citing the Fifth Circuit's statement in *Gafford v. Star Fish & Oyster Co.*, 475 F.2d 767 (5th Cir. 1973) that simultaneous or alternating exercise of challenges would be "better practice," contend that the trial court should have required alternating or simultaneous challenges, and that the procedure used denied them a fair trial.

■ This argument is without merit. The trial court has wide discretion in supervising the selection of jurors and regulating the exercise of peremptory challenges. *See United States v. Franklin*, 471 F.2d 1299, 1300 (5th Cir. 1973); *United States v. Williams*, 447 F.2d 894, 896–97 (5th Cir. 1971). Fed.R.Crim.P. 24(b), moreover, expressly provides that in multi-defendant cases the trial court may require peremptory challenges to be exercised jointly.

■ We find no basis for appellants' claims of prejudice. Counsel were informed prior to the beginning of voir dire of the procedure to be used and voiced no objection. This case, therefore, is totally unlike *United States v. Sams*, 470 F.2d 751 (5th Cir. 1972) in which the Fifth Circuit held that where the court had failed to explain the challenge procedures and defense counsel's misunderstanding of the procedure resulted in his being allowed to exercise only two challenges, reversible error had occurred. Here the record not only showed that defense counsel were permitted to fully exercise their challenges,[7] but that the defense accepted the jury with one challenge unused. While we agree with the *Star Fish* court that simultaneous or alternating challenges would be "better practice," under the circumstances we conclude that no error occurred. Accordingly, the convictions are AFFIRMED.

---

7. The record showed that the prosecution began the challenge procedure by accepting the jury without striking any member. Bryant's counsel then struck four jurors, Alvarez's counsel one, Cagnina's counsel one more and that juror's replacement, and then Alvarez's counsel struck one more. Defense counsel then agreed to tender the jury back to the government, which exercised two challenges and tendered the jury back to the defense. Cagnina's counsel exercised the ninth challenge and the defense tendered the jury. The prosecution then struck two more jurors and the defense accepted the jury without using its last challenge.