STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LAWRENCE BRUNSON, DEFENDANT-APPELLANT.

Argued September 10, 1985—Decided December 12, 1985.

*Michele A. Adubato,* Designated Counsel, argued the cause for appellant (*Thomas S. Smith, Jr.,* attorney; Acting Public Defender).

*Nancy M. Falivena,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this case appellant contests the validity of the procedure employed by the trial court for the exercise of peremptory challenges. Appellant was entitled to twenty peremptory challenges and the State to twelve. Rather than alternate the exercise of peremptory challenges between the State and appellant, the trial court required appellant to exercise two challenges and the State one challenge for eight successive rounds of challenges. During the last four rounds, each side was to alternate in exercising its remaining challenges. The State or appellant could pass at any time, subject to the risk that all further challenges were lost if both sides passed successively. Appellant contends that the procedure adopted by the trial court infringed so significantly upon the exercise of his right of peremptory challenge as to deprive him of a fair trial. We reject his contentions and affirm the conviction.

I

Appellant was charged in a three-count indictment with two counts of aggravated sexual assault during the commission of a kidnapping (*N.J.S.A.* 2C:14–2a) and one count of kidnapping by unlawful confinement for a substantial period with a purpose to facilitate the commission of sexual assault (*N.J.S.A.* 2C:13–1b(1)). He was convicted by a jury of aggravated sexual assault, sexual assault, and kidnapping. The sexual-assault conviction was merged into the conviction for aggravated sexual assault. Appellant was sentenced to a term of 20 years with

10 years parole ineligibility for the aggravated-sexual-assault conviction and to a concurrent 20 year term for the kidnapping conviction. The judgment of conviction was affirmed by the Appellate Division in an unpublished opinion. We granted certification limited solely to the questions raised as to the method of jury selection. 97 *N.J.* 681 (1984).

In view of the offenses charged in the indictment, appellant was entitled to twenty peremptory challenges and the State to twelve. *N.J.S.A.* 2A:78-7; *R.* 1:8-3. Prior to jury selection, the trial court announced the procedure to be followed in asserting peremptory challenges: "The State will have the first challenge. The defense will then challenge two jurors, and that will be the procedure for the first eight sets of challenges. After that, each side will have an equal number of challenges." Responding to questions from counsel about the procedure, the trial court explained that the defendant could pass at any time during the challenge procedure without waiving his remaining challenges. If, however, the defense and the State passed successively, the jury would be deemed acceptable to both sides. Appellant's counsel objected to the procedure announced by the trial court, contending that it was inconsistent with Rule 1:8-3 and circumvented his client's right to exercise more challenges than the State during the final stages of jury selection:

> [F]ollowing your procedure, the State, after a given point, and myself, are going to be equal in selecting the jury on the final challenge. That is not the intent of the rule. I make this objection strongly. I don't know if I have to use all my challenges. I don't want to be foreclosed using the two-for-one rule. You are circumventing a rule and I think my client's rights under Rule 1:83, to have the final challenges, I use that in plural on his behalf. You are also changing my strategy of picking a jury, versus the normal strategy I've had in other counties, one-on-one, until the final eight.

The trial court rejected the arguments of appellant's counsel, and the parties exercised their peremptory challenges in accordance with the procedure set forth by the trial court. The defense used all twenty challenges. The State did not exhaust its challenges.

Appellant raises a further contention concerning the size of the jury ultimately impaneled. Prior to jury selection, the trial court announced its intention to impanel a jury of sixteen because of the anticipated length of the trial. *See N.J.S.A.* 2A:74-2; *R.* 1:8-2(d). Both counsel agreed. Challenges were exercised on the assumption that a jury of sixteen would be impaneled. However, the pool of jurors available to the trial court was exhausted prior to the completion of peremptory challenges. As a result, when appellant exercised his final three peremptory challenges, reducing the size of the jury from sixteen to thirteen, there were no jurors available to replace the three challenged jurors. The trial court then announced its intention to proceed to trial with thirteen jurors. Appellant moved for a mistrial or, in the alternative, for an adjournment until a new jury panel was available. Both motions were denied. Appellant contends that the trial court's decision not to replace the last three challenged jurors improperly deprived him of three peremptory challenges.

The Appellate Division expressly considered and rejected appellant's challenges to the procedure used for exercising peremptory challenges and to the trial court's reduction of the size of the jury panel.

## II

Although the right of a defendant to challenge jurors peremptorily is guaranteed by neither the federal constitution, *Stilson v. United States,* 250 *U.S.* 583, 586, 40 *S.Ct.* 28, 29, 63 *L.Ed.* 1154, 1156 (1919), nor the New Jersey Constitution, *Brown v. State,* 62 *N.J.L.* 666, 678 (E. & A.), aff'd, 175 *U.S.* 172, 20 *S.Ct.* 77, 44 *L.Ed.* 119 (1899), it nevertheless is a right with deep historic roots. The right to exercise peremptory challenges was accorded to criminal defendants at common law and was accepted as part of the received common law in the early colonial and state courts. J. Van Dyke, *Jury Selection*

*Procedures* 148 (1977) (hereafter Van Dyke); *Brown v. State, supra,* 62 *N.J.L.* at 687.

According to Blackstone, the common-law right of peremptory challenge was primarily for the benefit of defendants—"a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous." 4 *W. Blackstone, Commentaries,* *353.[1] The significance of peremptory challenges in the selection of impartial juries was emphasized by Justice Harlan in *Pointer v. United States,* 151 *U.S.* 396, 14 *S.Ct.* 410, 38 *L.Ed.* 208 (1894):

> The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused. "The end of challenge," says Coke, "is to have an indifferent trial, and which is required by law; and to bar the party indicted of his lawful challenge is to bar him of a principal matter concerning his trial." He may, if he chooses, peremptorily challenge "on his own dislike, without showing any cause;" he may exercise that right without reason or for no reason, arbitrarily and capriciously. Any system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned. [*Id.* at 408, 14 *S.Ct.* at 414, 38 *L.Ed.* at 214 (citations omitted).]

The function of the peremptory challenge is "to eliminate extremes of partiality on both sides, [and] to assure the parties that the jurors before whom they try the case will decide on the

---

[1]Prior to 1305 English juries were effectively selected by the Crown by virtue of its unlimited right of peremptory challenge. In 1305 Parliament, by statute, limited the Crown to challenges for "cause certain" while preserving for defendants the right to challenge peremptorily. However, a judicially-created doctrine known as "standing jurors aside" had the effect of permitting the Crown to exclude undesirable jurors by ordering them to "stand aside" without cause, subject to eventual dismissal if a panel of unchallenged jurors was assembled. Although a defendant's right to challenge peremptorily was universally adopted by the states as part of the received common law, the doctrine of "standing jurors aside" met with wide resistance. By the end of the 19th century, the federal government and most of the states recognized the government's right to exercise peremptory challenges. Van Dyke, *supra,* 147–150; *see also* Comment, "Survey of the Law of Peremptory Challenges: Uncertainty in the Criminal Law," 44 *U.Pitt.L.Rev.* 673, 674–75 (1983) (reviewing the history of the peremptory challenge), and Brown, McGuire, & Winters, "The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse," Vol. 14:2, *New Eng.L.Rev.* 192, 193–95 (1978) (tracing the evolution of peremptory challenges).

basis of the evidence placed before them and not otherwise." *Swain v. Alabama,* 380 *U.S.* 202, 219, 85 *S.Ct.* 824, 835, 13 *L.Ed.*2d 759, 772, reh'g denied, 381 *U.S.* 921, 85 *S.Ct.* 1528, 14 *L.Ed.*2d 442 (1965).

The peremptory challenge, unlike challenges for cause, requires neither explanation nor approval by the court.[2] *Id.* at 220, 85 *S.Ct.* at 835, 13 *L.Ed.*2d at 772; *Pointer v. United States, supra,* 151 *U.S.* at 408, 14 *S.Ct.* at 414, 38 *L.Ed.* at 214; Van Dyke, *supra,* at 145. It is intended that each party will use peremptory challenges

> to remove those prospective jurors who appear most likely to be biased against him or in favor of his opponent; by so doing, it is hoped, the extremes of potential prejudice on both sides will be eliminated, leaving a jury as impartial as can be obtained from the available venire. [*People v. Wheeler,* 22 *Cal.*3d 258, 274, 583 *P.*2d 748, 760, 148 *Cal.Rptr.* 890, 901 (1978).]

This Court has acknowledged the crucial role of the peremptory challenge in assuring the right to trial by an impartial jury:

> Were we of the view that the trial judge had in fact erroneously deprived defendant of a peremptory challenge, his contentions in this regard would merit serious consideration by this Court. Jury selection is an integral part of the process to which every criminal defendant is entitled. Although not constitutionally required to do so, *see Brown v. State,* 62 *N.J.L.* 666 (E & A 1899), the Legislature and this Court have sought to insure that the triers of fact will be "as nearly impartial 'as the lot of humanity will admit' " by providing defense counsel with twenty peremptory challenges. *State v. Jackson,* 43 *N.J.* 148, 158 (1964), *cert.* den. *sub nom. Ravenell v. New Jersey,* 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.*2d 572 (1965). *See N.J.S.A.* 2A:78-7(c); *R.* 1:8-3(d). As such, "[t]he denial of the right of peremptory challenge is the denial of a substantial right." *Wright v. Bernstein,* 23 *N.J.* 284, 295 (1957). [*State v. Singletary,* 80 *N.J.* 55, 62 (1979) (citations omitted).]

The right of peremptory challenge is granted to criminal defendants by statute, *N.J.S.A.* 2A:78-7(c), (d), and is implemented by Court Rule 1:8-3(d). *State v. Hoffman,* 82 *N.J.* 184,

---

[2]*But cf. State v. Gilmore,* 199 *N.J.Super.* 389, 401 (App.Div.), certif. granted, 101 *N.J.* 285 (1985), in which the Appellate Division concluded that "our State constitution [Art. I, ¶¶ 5, 9, and 10 (1947)] guarantees that the use of peremptory challenges may not restrict unreasonably the possibility that the petit jury will comprise a representative cross-section of the community."

187 (1980). Neither the statute[3] nor the Rule[4] specifies the procedure by which peremptory challenges are to be exercised. The procedure generally used in cases involving a single defendant requires the challenges to be exercised alternately, beginning with the State. This process continues until either the jury is accepted by both sides or all challenges are exhausted. Arnold, "Criminal Practice and Procedure," 32 *N.J.Practice* § 941 at 315–16 (2d ed. 1980). Counsel for the State and appellant concur that the foregoing procedure reflects the usual practice in criminal trials. Appellant contends that the procedure adopted by the trial court in this case so significantly deviates from the commonly-accepted practice as to deprive him of his right to trial by an impartial jury. Specifically, appellant claims that the requirement that he exercise challenges on a one-for-two basis during the first eight rounds of challenges eviscerated the advantage, accorded him by statute and the

---

[3]*N.J.S.A.* 2A:78–7(c) provides that:

Upon the trial of any action in any court of this state, the parties thereto shall be entitled to peremptory challenges as follows:

\* \* \* \* \* \* \* \*

c. Upon an indictment for treason, murder, kidnapping, misprision of treason, manslaughter, sodomy, rape, arson, burglary, robbery, forgery, perjury, or subornation of perjury, a defendant, if tried alone, 20; if 2 or more defendants are tried together, 10 each; the state, 6 peremptory challenges for each 10 allowed to the defendants. This paragraph c. shall not apply to struck or foreign juries.

[4]Rule 1:8–3(d) provides:

Peremptory Challenges in Criminal Actions. If the offense charged is kidnapping, murder, aggravated manslaughter, manslaughter, aggravated sexual assault, sexual assault, aggravated criminal sexual contact, aggravated arson, arson, burglary, robbery, forgery if it constitutes a crime of the third degree as defined by *N.J.S.A.* 2C:21–1b, or perjury, the defendant shall be entitled to 20 peremptory challenges if tried alone and to 10 such challenges when tried jointly; and the State shall have 12 peremptory challenges if the defendant is tried alone and 6 peremptory challenges for each 10 afforded defendants when tried jointly. In other criminal actions each defendant shall be entitled to 10 peremptory challenges and the State shall have 10 peremptory challenges for each 10 challenges afforded defendants.

Rules of Court, of exercising greater selectivity than the State in the later rounds of jury selection.

In resolving appellant's claim, we gain insight from the practice and decisions in the federal courts. The specific procedure for exercising peremptory challenges in federal criminal cases varies from district to district, subject to local court rule. 2 C. Wright, *Federal Practice and Procedure: Criminal* 2d § 387 at 381 (1982); J. Moore, *Federal Practice,* ¶ 24.05 at 24-83, -84 (2d ed. 1985). The general rule in the federal courts is that "the order in which peremptory challenges shall be exercised is in the discretion of the court." *United States v. Pointer, supra,* 151 *U.S.* at 410, 14 *S.Ct.* at 415, 38 *L.Ed.* at 214; *St. Clair v. United States,* 154 *U.S.* 134, 147-48, 14 *S.Ct.* 1002, 1007-08, 38 *L.Ed.* 936, 941-42 (1893).

A number of federal decisions have upheld the validity of peremptory challenge procedures similar to the one-for-two method employed by the trial court in this case. *See, e.g., United States v. Durham,* 587 *F.*2d 799, 801 (5th Cir.1979) (not an abuse of discretion to require defendants to exercise two challenges for each one challenge exercised by the government where government had six challenges and two defendants had a total of ten challenges to be exercised jointly); *United States v. Haldeman,* 559 *F.*2d 31, 79-80 (D.C.Cir.1976), *cert.* denied, 431 *U.S.* 933, 97 *S.Ct.* 2641, 53 *L.Ed.*2d 250, reh'g denied, 433 *U.S.* 916, 97 *S.Ct.* 2992, 53 *L.Ed.*2d 1103 (1977) (not an abuse of discretion to require defendants to exercise two joint challenges for each challenge exercised by government where government had six challenges and five defendants had a total of 15 challenges, of which ten where to be exercised jointly); *cf. United States v. Blouin,* 666 *F.*2d 796 (2d Cir.1981) (not an abuse of discretion for court to refuse to replace challenged juror prior to defendant's exercise of tenth challenge where government had six challenges, defendant had ten, and court required challenges to be exercised on a one-for-two basis for four rounds and two challenges for each side in fifth round, with the replacement jurors selected after each round); *United States v. Pimentel,*

654 *F.*2d 538, 540–41 (9th Cir.1981) (not an abuse of discretion for court to treat three passes as if they were exercised challenges where, pursuant to local rule, challenges were exercised in six rounds, with defendant required to exercise two challenges for each government challenge during second, third, fourth, and fifth rounds); *United States v. Keegan*, 141 *F.*2d 248, 255 (2d Cir.1944), rev'd on other grounds, 325 *U.S.* 478, 65 *S.Ct.* 1203, 89 *L.Ed.*2d 1745 (1945) (not an abuse of discretion for court to deny defendants the right to challenge last where defendants required to exercise two challenges jointly for each government challenge during first four rounds and to alternate challenges, one-for-one, during last two rounds).

Other federal courts employ a "struck jury" system, in which challenges are exercised against a pool of jurors equal in number to the sum of the number of jurors in the ultimate panel and the aggregate number of peremptory challenges available to both sides. A number of federal courts have held that implementation of peremptory challenges against a "struck jury" is within the discretionary power accorded to trial judges pursuant to Rule 24(b) of the Federal Rules of Criminal Procedure. *United States v. Williams*, 447 *F.*2d 894, 896–97 (5th Cir.1971) (not an abuse of discretion to require government and defendants to exercise sixteen peremptory challenges against an initial pool of thirty-two jurors impaneled by the court); *accord, United States v. Morris*, 623 *F.*2d 145, 151–52 (10th Cir.), *cert.* denied, 449 *U.S.* 1065, 101 *S.Ct.* 793, 66 *L.Ed.*2d 609 (1980); *United States v. Sams*, 470 *F.*2d 751, 753–54 (5th Cir.1972); *Amsler v. United States*, 381 *F.*2d 37, 44 (9th Cir. 1967); *cf. State v. Crocker*, 435 *A.*2d 58, 70–72 (Me.1981) (not error to require prosecutor and defense to exercise 15 out of 33 peremptory challenges against the preliminary pool of 35 jurors where court impaneled a "struck jury" of 47 in two stages, impaneling 35 jurors by the second day of *voir dire* and 12 additional jurors on the third day).

Another procedure used by federal district courts involves simultaneous challenges, requiring the prosecution and defense

to submit to the court, at the same time, a list of jurors peremptorily challenged by each side. Although this method of jury challenge frequently results in the same juror being challenged by both prosecution and defense, it has been upheld as within the permissible scope of discretion afforded by the Federal Rules. *See, e.g., United States v. Roe*, 670 *F.*2d 956, 961 (11th Cir.), *cert.* denied 459 *U.S.* 856, 103 *S.Ct.* 126, 74 *L.Ed.*2d 109 (1982); *United States v. Sarris*, 632 *F.*2d 1341, 1343 (5th Cir.1980); *Carbo v. United States*, 314 *F.*2d 718, 748 (9th Cir.1963), *cert.* denied, 377 *U.S.* 953, 84 *S.Ct.* 1625, 12 *L.Ed.* 2d 498 (1964); *Hanson v. United States*, 271 *F.*2d 791, 793 (9th Cir.1959).

In *United States v. Bryant*, 671 *F.*2d 450 (11th Cir.1983), the court criticized but upheld the validity of a "challenge-and-tender" method of jury selection, in which "the prosecution would exercise challenges first, then tender the jury to the defendants who would exercise their challenges and tender the jury back to the government." *Id.* at 455. The court observed that a system of simultaneous or alternating challenges would be better practice but concluded that no error had occurred. *Id.* (citing *Gafford v. Star Fish & Oyster Co.*, 475 *F.*2d 767, 768 (5th Cir.1973)).

Some federal courts do not permit a party to exercise peremptory challenges against any juror previously passed by that party. This practice has also been upheld as an appropriate exercise of the court's discretion. *See, e.g., United States v. Anderson*, 562 *F.*2d 394, 396–97 (6th Cir.1977); *United States v. Mackey*, 345 *F.*2d 499, 502 (7th Cir.), *cert.* denied, 382 *U.S.* 824, 86 *S.Ct.* 54, 15 *L.Ed.*2d 69 (1965); *United States v. Rojas*, 607 *F.Supp.* 1439, 1443–44 (D.C.Ind.1985). *But cf. United States v. Sams, supra*, 470 *F.*2d at 755 (trial court's refusal to allow defendant to challenge peremptorily jurors previously passed held reversible error where visiting judge did not follow local practice and defense counsel was misled by question from court clerk concerning the possible waiver of additional peremptory challenges); *United States v. Turner*, 558 *F.*2d 535 (9th

Cir.1977) (trial court erred in treating defense counsel's accept-
ance of jury panel on three occasions during jury selection as
constituting exercise of three peremptory challenges).

Contrasting with the variety of peremptory-challenge proce-
dures used in federal courts, a substantial number of states
have adopted specific procedures for the exercise of peremptory
challenges in criminal cases.[5] *See* Note, "Selection of Jurors by
Voir Dire Examination and Challenge," 58 *Yale L.J.* 638, 641
(1949).

## III

▮ Evaluating the procedure employed by the trial court in
this case in the context of the diverse peremptory-challenge
practices that have been approved in other jurisdictions convinc-

---

5  A majority of states have adopted a specific statute or court rule mandat-
ing the order in which peremptory challenges shall be exercised. Some
jurisdictions require the challenges to be exercised alternately, the first chal-
lenge to be exercised by the prosecution. *See, e.g., Alaska Rules of Court Pro.
and Admin., R.Crim.P.* 24(d); *Colo.Court Rules, R.Crim.P.* 24(d)(4); *D.C.Court
Rules Ann., R.Crim.P.* 24(b); *Iowa Rules of Court, R.Crim.P.* 17(12); *Me.Rules of
Court, R.Crim.P.* 24(c); *Mont.Code Ann., R.R.Crim.P.* 46–16–301, –305; *Me.Rules
of Court, R.Crim.P.* 24(c); *Nev.Rev.Stat.*, tit. 14 § 175.051; *Ohio Rules of Court,
R.Crim.P.* 24(D); *Okla.Court Rules and Pro., R.Crim.P.* § 693; *Or.Rules of Court,
R.Civ.P.* 57(D)(3) (1984); *Pa.Rules of Court, R.Crim.P.* 1106(e)(2)(F); *SDCL*
§ 23A–20–25 and *S.D.Comp.Laws Ann., R.Crim.P.* 18 (1967); *Utah Code Ann.*
§ 77–35–18, *R.* 18(a); *Vt.Court Rules Ann., R.Crim.P.* 24(c); *Wash.Court Rules,
R.* 6.4(e); *Wis.Court Rules and Pro., R.* 972.04.

Two states require the challenges to be exercised alternately, the first chal-
lenge to be exercised by the defendant. *Del.Code Ann., Ct. of C.P.Crim.R.* 24(b);
*Minn.Rules of Court, R.Crim.P.* 26.02, Subd. 4(3)(a)6; *Del.Code Ann., Ct. of
C.P.Crim.R.* 24(b).

Kentucky and Tennessee allow the prosecution and defense to exercise
written challenges simultaneously. *Ky.Rules of Court, R.Civ.P.* 47.03 and
*R.Crim.P.* 9.40; *Tenn.Court Rules, R.Crim.P.* 24(c).

A few states require the prosecution to exhaust its challenges before requir-
ing the defense to exercise any challenges. *See, e.g., N.M.Stat.Ann., Dist.Ct.R.
Crim.P.* 39(b); *N.Y.Consol.Laws Ann., CPL* § 270.15(2); *W.Va.Rules Ann.,
R.Crim.P.* 24(b).

Still other states have adopted unique procedures that do not fit within the
foregoing categories. *See, e.g., Ga.Rules of Court Ann., R.* 11; *Ann.Code of the
Public Gen.Laws of Md., Crim.R.* 4–313; *Ga.Rules of Court Ann., R.* 11;
*S.C.Court Register, Cir.Ct.R.* 25.

es us that appellant's right of peremptory challenge was not prejudicially impaired. We note that the right of peremptory challenge is a right of rejection rather than selection. *Wright v. Bernstein,* 23 *N.J.* 284, 293–94 (1957). Accordingly, the issue before us is whether the one-for-two challenge procedure adopted by the trial court had so adverse an impact on defendant's right to reject members of the jury panel as to constitute prejudicial error.

By according a defendant eight more peremptory challenges than the State, the statute reflects a legislative determination that the defendant's exposure to punishment entitles him to more opportunities than the State to exclude jurors who appear to have a potential for bias. This numerical advantage in peremptory challenges would ordinarily permit a defendant to retain all or part of the extra challenges for use in the later stages of jury selection. Under the usual procedure of alternating challenges, a defendant's advantage in the final rounds of selection depends upon the number of times the prosecution passes during the early rounds. Therefore, a defendant's right to maintain a numerical advantage in the final rounds of jury selection is not absolute; rather, it is subject to dilution on the basis of the prosecution's strategy in asserting its own challenges.

Although there may be a tactical benefit to a defendant who retains his extra peremptory challenges until the last stages of jury selection, we are not persuaded that any such real or perceived advantage is inviolate. The procedure adopted by the trial court did not prevent defendant from exercising all twenty of his peremptory challenges. Indeed, using the customary alternating method of exercising peremptory challenges, the one-for-two ratio of challenges imposed by the trial court during the first eight rounds of challenges could have been duplicated by the prosecution electing to forego its right of challenge every other round.

■■ We adhere to the view previously expressed by us that "[t]he denial of the right of peremptory challenge is the denial of a substantial right." *Wright v. Bernstein, supra,* 23 *N.J.* at 295. The procedure adopted by the trial court in this case, however, did not impermissibly curtail appellant's full exercise of his right to challenge jurors peremptorily.

■ We are nevertheless impressed by the desirability of a standardized procedure for the implementation of the exercise of peremptory challenges in criminal cases.[6] Accordingly, we will solicit the recommendation of our Criminal Practice Committee as to the establishment by Court Rule of a procedure governing the exercise of peremptory challenges. In the interim, to maintain uniformity trial courts should refrain from using peremptory challenge procedures that differ from the customary, one-for-one, alternating method.

■ Finally, we reject appellant's contention that the trial court's decision to reduce the jury panel from sixteen to thirteen resulted in a denial of appellant's right to exercise three peremptory challenges. The Rules of Court expressly permit the impaneling of a jury of such number greater than twelve "as is appropriate under the circumstances." *R.* 1:8–2(d). Additional jurors are often impaneled in anticipation of a lengthy trial in order to assure that sufficient jurors will be available to decide the case. 32 *N.J.Practice, supra,* § 936 at 307. Never-

---

[6]The lack of procedural rules governing in federal district courts governing the exercise of peremptory challenges in federal district courts was criticized by Judge Hufstedler in *United States v. Turner, supra,* 558 *F.*2d at 537:

> The absence of any uniform national or, in this case, even local rules of court spelling out the procedure for exercising peremptory challenges in criminal cases has been justifiably condemned. The end product is a procedural muddle that traps the unwary district judge as well as the unwary litigant to the profit of no one.

*See also ABA Standards Relating to the Administration of Criminal Justice, Trial by Jury* (2d ed. 1980), § 15–2.6(c) at 15.61 ("The number of peremptory challenges and the procedure for their exercise should be governed by rule or statute.").

theless, no defendant has a right to be tried by a jury of more than twelve members. *N.J.S.A.* 2A:74-1; *R.* 1:8-2(a). Accordingly, in criminal cases in which more than twelve jurors are impaneled, the size of the jury panel is reduced to twelve jurors before deliberations begin, with the court retaining the discretion to sequester and not discharge one or more of the alternate jurors. *R.* 1:8-2(d).

A contention similar to that advanced by appellant was rejected by this Court in *State v. Belton*, 60 *N.J.* 103 (1972), where we observed:

[T]he motion for a mistrial was not grounded on any suggestion of contamination but on the contention that the defendants were improperly being "precluded from having a group of fourteen jurors from which to choose" at the end of the case. The contention was properly rejected as utterly without merit for the defendants had no right to have fourteen jurors at the close of the case. The very reason for having the alternate jurors was to enable the proceedings to continue with at least the required twelve jurors if during the course of the trial a juror was, for any reason, no longer able to serve. [*Id.* at 108-09 (citations omitted).]

The focus of appellant's argument in this case is that his right to exercise twenty peremptory challenges was unfairly diluted because his challenges were asserted against a panel of sixteen jurors, and the trial court, at the conclusion of jury selection, decided to impanel only thirteen jurors. The minimal dilution of a defendant's right of peremptory challenge that inevitably results from an increase over twelve in the number of jurors impaneled is specifically authorized by the Rules of Court and is necessary, particularly in protracted cases, to assure that at least twelve jurors will be available to deliberate at the conclusion of the trial. *See* Pressler, *Current New Jersey Court Rules*, Comment *R.* 1:8-2(d). Therefore, the trial court's initial decision to impanel sixteen jurors is unassailable.

The record indicates that at the time appellant exercised his last three challenges, reducing the jury panel to thirteen, no other jurors were then available to the court. Nor would additional jurors become available unless the trial were adjourned for several days. In this context, the trial court's

decision to proceed with a jury of thirteen was an appropriate exercise of discretion. Under these circumstances, any dilution of appellant's right of peremptory challenge was attributable only to the court's initial decision, expressly authorized by the Rules of Court, to impanel a jury of sixteen. Appellant sustained no prejudice because of the court's decision to avoid an adjournment of the trial by reducing the jury panel from sixteen to thirteen.

For the foregoing reasons, we affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ and Justices CLIF-FORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.