[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10079

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VALDEZ WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cr-00248-CEM-LRH-1

_____

Before ROSENBAUM, GRANT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Valdez Williams appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). No reversible error has been shown; we affirm.

On appeal, Williams argues that section 922(g)(1) is unconstitutional both on its face and as applied to him. Williams also challenges the trial court's *voir dire* procedure: a procedure Williams says deprived him of the opportunity to make intelligent use of his peremptory challenges.

We reject Williams's challenge to the constitutionality of section 922(g)(1). As Williams concedes, his facial challenge under the Commerce Clause is foreclosed by our binding precedent. "We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement." *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011). We also reject Williams's argument that section 922(g)(1) is unconstitutional as applied to him. The undisputed evidence at trial demonstrated that the gun and ammunition possessed by Williams in Florida were manufactured outside of Florida and, thus, had

traveled in interstate commerce. *See United States v. Wright*, 607 F.3d 708, 715-16 (11th Cir. 2010) (noting that section 922(g) "only requires that the government prove some 'minimal nexus' to interstate commerce, which it may accomplish by 'demonstrat[ing] that the firearm possessed traveled in interstate commerce.'").

We next address Williams's challenge to the district court's *voir dire* procedure. Before jury selection began, the district court judge explained to the parties that the 41 prospective jurors would be examined in groups of 18, that the district court planned to seat 12 jurors and 1 or 2 alternates, that Williams would receive 10 peremptory challenges and the prosecution would receive 6, and that the district court would allow the parties to "back strike" within any group of 18. Williams raised no objection to the district court's announced *voir dire* procedure.

The district court then conducted *voir dire* on the first group of 18 jurors. After the parties exercised some strikes for cause about this first group, Williams's lawyer asked the district court to allow the parties to exercise their peremptory challenges after they had examined all 41 prospective jurors. The district court said it would proceed with the already-announced procedure but said, "[i]f you use all of your peremptory challenges here and it's your argument that you would have preferred to use it on someone else you didn't know of in the second panel, I have an open door for a request for you to ask for an additional peremptory." The parties then exercised peremptory challenges on the first group; Williams

exercised 8 of his 10 allotted peremptory challenges to strike jurors within the first group of 18.

The district court then conducted *voir dire* on the second group of 18 jurors. After addressing the parties' challenges for cause, the district court told Williams that he had two peremptory challenges left and reiterated that Williams was "welcome to ask for more if you run out." Williams used his last two remaining peremptory challenges and then requested six more. The district court granted Williams three extra peremptory challenges. The district court, however, denied Williams's challenges on Juror 26 (who had expressed economic hardship due to COVID-19), and on Jurors 31 and 36 (each of whom had family members or friends who worked in law enforcement).

On appeal, Williams contends that the district court's procedure -- requiring the parties to exercise peremptory challenges without first having the opportunity to examine all prospective jurors -- impaired his ability to exercise intelligently his peremptory challenges. Williams says the district court's peremptory-challenge procedure constituted an error requiring automatic reversal.[1]

We review for abuse of discretion "the procedure adopted by the trial court to regulate the parties' exercise of peremptory challenges." *See United States v. Green*, 981 F.3d 945, 958 (11th

---

[1] The challenge is a process challenge. Williams raises no challenge to the district court's denial of peremptory challenges specifically to Jurors 26, 31, or 36.

21-10079                Opinion of the Court                      5

Cir. 2020). We have recognized that the "trial court has wide dis-cretion in supervising the selection of jurors and regulating the ex-ercise of peremptory challenges." *See id.* (quotations omitted); *United States v. Bryant*, 671 F.2d 450, 455 (11th Cir. 1982).

The chief purpose of peremptory challenges is "to help se-cure the constitutional guarantee of trial by an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000). The Supreme Court has "long recognized," however, that peremptory challenges are "auxiliary" and are "not of federal constitutional di-mension." *Id.* at 311; *Rivera v. Illinois*, 556 U.S. 148, 152 (2009). The exercise of peremptory challenges is instead governed by Fed. R. Crim. P. 24. *See Martinez-Salazar*, 528 U.S. at 311; *United States v. Lopez*, 649 F.3d 1222, 1243 (11th Cir. 2011) ("The exercise of per-emptory challenges is a statutory- or rule-based right."). For non-capital felony cases, Rule 24 provides that the government receives six peremptory challenges and the defendant receives ten peremp-tory challenges. *See* Fed. R. Crim. 24(b)(2). Rule 24 establishes no specific method for the exercise of peremptory challenges. *See id.*

We cannot conclude that the district court abused its discre-tion in conducting *voir dire* in this case. The district court in ad-vance explained to the parties the procedure to be used for con-ducting *voir dire*, including that the parties would need to exercise peremptory challenges following the questioning of each group of 18 jurors. Williams raised no contemporaneous objection to that announced procedure. *Cf. Bryant*, 671 F.2d at 455 (concluding the district court's jury-selection procedure constituted no abuse of

discretion in part because the district court provided advance notice of the challenged procedure and no party objected). We also note that the district court's peremptory-challenge procedure applied equally to both Williams and to the prosecution. Cf. United States v. Ochoa-Vasquez, 428 F.3d 1015, 1038 (11th Cir. 2005) (concluding that the district court abused no discretion in empaneling an anonymous jury, observing that the prosecution was equally hampered in its ability to exercise peremptory challenges).

The district court afforded Williams the ten peremptory challenges required by Rule 24(b)(2). Furthermore, the district court added flexibility to the process by allowing the parties to request additional peremptory challenges during voir dire on the second group of 18 jurors. And the district court in fact granted Williams three additional peremptory challenges.

That some better alternative to the district court's chosen peremptory-challenge procedure might exist is insufficient to demonstrate an abuse of discretion. See Bryant, 671 F.2d at 455 (concluding that the district court's method of exercising peremptory challenges constituted no error even though an alternative procedure would have been the "better practice"). The district court's acknowledgement that it might consider using a different procedure in the future in no way demonstrates that the district court's actually-used procedure fell outside the district court's wide discretion in this area. We have recognized that "the purpose of voir dire is to ascertain disqualifications, not to afford individual analysis in depth to permit a party to choose a jury that fits into

21-10079            Opinion of the Court            7

some mold that he believes appropriate for his case." *See Ochoa-Vasquez*, 428 F.3d at 1038.

For these reasons, we see no abuse of discretion in the district court's use of the challenged *voir dire* procedure. Even were we to suppose an error, we reject Williams's assertion that such an error would require automatic reversal.[2]

A criminal defendant's right to exercise peremptory challenges is a right that arises under the Federal Rules, not the constitution. *See Martinez-Salazar*, 528 U.S. at 311. We review alleged violations of non-constitutional error under a harmless-error standard. *See United States v. Williams*, 731 F.3d 1222, 1236 (11th Cir.

---

[2] In support of his argument that the purported error requires automatic reversal, Williams says we are bound by our prior decision in *Central Alabama Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629 (11th Cir. 2000). Williams is mistaken. In *Central Alabama* -- a civil action alleging housing discrimination -- we addressed a district court's erroneous ruling that defendants established a *prima facie* case of discrimination under *Batson v. Ky.*, 476 U.S. 79 (1986). We said that, when "a district court allows a *Batson* challenge in the absence of a *prima facie* case, the error is not harmless, and the case must be remanded for a new trial." 236 F.3d at 639. The facts and law involved in *Central Alabama* are too dissimilar from the circumstances presented in this appeal. Nothing in *Central Alabama* can mandate an automatic reversal in this appeal. *See United States v. Bazantes*, 978 F.3d 1227, 1244 (11th Cir. 2020) ("To the extent that an earlier decision is distinguishable from the case at hand, it may be a prior precedent, but it is not one that can dictate the result of the current case under the prior precedent rule.").

A great difference exists between following a precedent and extending it.

2013) (rejecting -- based on the Supreme Court's decision in *Rivera v. Illinois*, 536 U.S. 148 (2009) -- the criminal defendant's argument that the district court's error in applying *Batson* required an automatic reversal).  Under this standard, the government bears the burden of showing that an error did not affect the defendant's substantial rights.  *Id.* at 1236.

The government has met that burden in this case.  Williams says that -- under a different *voir dire* procedure -- he would have struck Jurors 31 and 36 based on their ties to law enforcement and would have struck Juror 26 based on financial hardship.  Jurors 31 and 36, however, each said expressly under oath that their relationships with people in law enforcement would not interfere with their ability to remain fair and impartial in this case or with their assessment of the credibility of law-enforcement personnel who would testify at trial.  Also, although Juror 26 indicated on a questionnaire that jury service would result in economic hardship, she later stood silent when the district court asked whether serving on the jury would cause anyone significant financial hardship.  In short, nothing shows that these jurors were in fact biased or subject to disqualification.  So, the supposed procedural error (if any) does not amount to a reversible error.

All the same, the chief point for our decision is this one: the district court abused no discretion in applying the questioned preemptive-challenge procedure.

AFFIRMED.