709 A.2d 277

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JESSE LOMAX, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 22, 1998—Decided May 5, 1998.

Before Judges D'ANNUNZIO, A.A. RODRIGUEZ and COBURN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Daniel V. Gautieri*, Assistant Deputy Public Defender, of counsel and on the brief).

*Arthur J. Marchand*, Cumberland County Prosecutor, attorney for respondent (*Victoria L. Kuhn*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

██ The defendant was found guilty by a jury of possession of heroin, a violation of *N.J.S.A.* 2C:35–10a(1), and was sentenced to imprisonment for five years. He appeals, contending that his rights were violated during *voir dire* when the trial judge interviewed prospective jurors at sidebar while his attorney and the prosecutor remained at counsel table. Although he also seeks reversal on other grounds, it is unnecessary for us to consider them because we are satisfied that the irregular *voir dire* procedure requires a new trial. The point is raised for the first time on appeal. Nonetheless, it is a substantial one, deserving of recognition as plain error. *R.* 2:10–2. We are convinced that the defendant was deprived of his right to the effective assistance of counsel at a critical stage of the trial, as guaranteed by the Sixth Amendment of the United States Constitution and by article I, paragraph 10 of the New Jersey Constitution.

On the afternoon of November 22, 1995, three Vineland police officers were on patrol when they observed the defendant on the street in front of Benny's Pool Hall at 216 Southwest Boulevard. The area was known to them as one in which the sale of heroin was prevalent. After confirming the existence of an arrest warrant for defendant, the officers approached him and advised that he was under arrest. One of them, Detective Collins, placed handcuffs on the defendant and searched him for weapons and contraband. Three inches below the defendant's waistband Collins felt a small object which he concluded was probably a packet of heroin. He told the defendant that he had located heroin in his pants and that he would require the defendant to hand the packet to·him when they reached the police station. According to Collins, the defendant complied. The defendant claimed that Collins said nothing about finding a packet of heroin at the scene. He further testified that after they arrived at the police station it was Collins who produced the heroin, which had never been on defendant's person. Defendant admitted that he was a user of heroin and had

come to the area to make a purchase. Although he had no money at the time, he was intending to buy the heroin on credit.

At the commencement of jury selection, before fourteen jurors were placed in the jury box, the judge advised the prospective jurors that if there were matters "that you are not comfortable discussing in front of the entire group, you may ask to come up close to the bench and talk to me." During *voir dire*, the judge conducted recorded sidebar interviews with eight prospective jurors while the defense attorney and the prosecutor remained at counsel table, in sight but out of hearing range. These interviews supplemented in-box interviews of those prospective jurors. Following each interview, the judge either excused the juror for cause or directed the juror to return to the jury box. Then, the judge invited counsel to sidebar, where she related, with varying degrees of accuracy, the information gleaned from the interview and her decision with respect to whether the juror was excused for cause or tentatively seated in the box. Neither counsel objected to the procedure.

The selection of petit jurors is governed, in part, by statute. *N.J.S.A.* 2B:23–10 provides:

> a. In the discretion of the court, parties to any trial may question any person summoned as a juror after the name is drawn and before the swearing, and without the interposition of any challenge, to determine whether or not to interpose a peremptory challenge or a challenge for cause. Such examination shall be permitted in order to disclose whether or not the juror is qualified, impartial and without interest in the result of the action. *The questioning shall be conducted in open court under the trial judge's supervision.*
>
> [ (Emphasis added).]

The Rules of Court also provide guidance on the subject. *R.* 1:8–3(a) provides, in pertinent part, the following:

> (a) Examination of Jurors. For the purpose of determining whether a challenge should be interposed, the court shall interrogate the prospective jurors *in the box* after the required number are drawn without placing them under oath. *The parties or their attorneys may supplement the court's interrogation in its discretion.*
>
> [ (Emphasis added).]

Another relevant Court Rule states that the "defendant shall be present at every stage of the trial, including the impaneling of the jury...." R. 3:16(b). And in *State v. McCombs*, 81 *N.J.* 373, 408 *A.*2d 425 (1979), the Court held that the *voir dire* examination of prospective jurors is a critical stage during which a criminal defendant is entitled to representation by counsel.

The only exception recognized in this state to the rule that interrogation of a juror must occur within the juror box is set forth in *State v. Kamienski*, 254 *N.J.Super.* 75, 603 *A.*2d 78 (App.Div.), *certif. denied*, 130 *N.J.* 18, 611 *A.*2d 656 (1992), where we held that matters which might result in comments by the prospective juror which could have an adverse effect on the fairness of other prospective jurors (and, by implication, matters involving disclosure of sensitive information which the juror might wish to convey outside the hearing of the other jurors), should be discussed at sidebar in the presence of "the judge *and counsel* privately on the record." *Id.* at 109, 603 *A.*2d 78 (emphasis added).

In *Wright v. Bernstein*, 23 *N.J.* 284, 129 *A.*2d 19 (1957), the Court considered an incident involving a juror whose possible prejudice came to light during the trial, resulting in a motion for a mistrial. The trial court denied the motion and permitted a verdict to be returned. Thereafter, the trial court interviewed the juror for the purpose of learning whether the trial had been compromised. The trial court let the verdict stand. The interview was conducted in chambers in the absence of counsel. The Court reversed the judgment on the ground that the motion for a mistrial should have been granted since the information revealed during trial demonstrated that the juror had provided deceptive and misleading information during the original *voir dire*. More importantly, for present purposes, the Court strongly condemned the trial court's use of an *ex parte* interview in these words:

> We disapprove of the procedure pursued by the trial court in interrogating the juror.... No juror should be questioned by the court in regard to his conduct either within or without the jury room *in the absence of counsel.*
>
> [*Id.* at 297, 129 *A.*2d 19.]

As the Court noted in *State v. Biegenwald*, 126 *N.J.* 1, 594 *A.*2d 172 (1991), the "purpose of *voir dire* is ... to provide *both counsel* and the court the opportunity to assess the venireperson's demeanor. We reiterate that *voir dire* should proceed with the conscious object of providing court *and counsel alike* with sufficient information with which to challenge potential jurors intelligently—whether for cause or peremptorily." *Id.* at 39, 594 *A.*2d 172 (emphasis added).

The State relies on the absence of any New Jersey case specifically condemning the procedure followed here and emphasizes the presence of counsel in the courtroom, and the judge's practice of immediately summarizing the information gleaned from the juror.

Lest there be any doubt of the dangers to due process arising from this irregular procedure, we note the following occurrences during the *voir dire.*

Prospective juror Nancy McDowell told the judge, "my son had a gun pulled on him last week and I don't think it would ... bother me...." A few moments later, she said, "It *bothers* me that a gun was pulled on him but, you know." (Emphasis added). The judge then asked her whether that "would make it *impossible* for you to be fair?" (Emphasis added). She replied, "I don't think so." The judge asked, "[C]an you judge this case on the evidence?" She replied, "I think I could." When counsel came to sidebar, after briefly describing the gun incident, the judge described her response regarding its effect on her ability to be fair in these words: "She feels as though she can be fair and that situation [will not] affect her ability to be fair. She feels as though she can judge this case based on the evidence, and so I left her on."

The judge failed to tell counsel that the juror had said she was "bothered" by the gun incident. Nor did the judge indicate that the question asked was whether the gun incident would make it "impossible" for the juror to be fair. Nor did the judge indicate

that juror's responses clearly demonstrated that, at the least, she harbored some concern about her ability to be fair.

The record of the interview with prospective juror Douglas Cossaboon begins with an indication of lack of audibility regarding his first statement. There is nothing in the record to indicate the nature of the information he supplied until the judge described her recollection of it to counsel at sidebar. Obviously, there is no certain way to gauge the accuracy of the judge's recollection. Since counsel could not hear the exchange, reconstruction of the record would be a highly questionable exercise.

The interview of prospective juror Gloria Frion also began with an inaudible statement. When the judge explained to counsel why she had been excused for cause, the summary included the following information: her nephew, a Vineland police officer, had been shot five years ago by a young black man. Although the record of the juror's remarks reveals part of that information, it does not reveal when the crime occurred or that the shooting was done by a young black man.

Prospective juror David Peacock, Sr., told the judge at sidebar that "about a month ago, I was in Vineland court for a DWI charge of which I was acquitted." The judge asked if the juror had been "found not guilty." The juror replied that he had been "cleared of the charges." The judge asked if the juror had testified in the case, and the juror answered unresponsively, "I was represented by an attorney." When the judge summarized the exchange for the benefit of counsel, she advised, among other things, "A short time ago he had a DWI ticket and he went to court. He didn't testify and he was found not guilty." Thus, the summary failed to indicate with the precision provided by the juror when the court appearance occurred and it included a supposed fact, that the juror had not testified, which did not come from the juror, except by an illogical inference from the juror's unresponsive answer. Furthermore, the judge said the juror had been found not guilty, and yet the conversation did not make clear whether there was an adjudication on the merits or a dismissal on

procedural grounds. The judge also omitted the fact that the prosecution took place in Vineland and therefore involved the same police department as that of the arresting police officers in this case. That counsel obtained that last fact by a question of the judge does not undercut the point that without that question the summary would have been deficient in an important respect.

We will not belabor the point by comparing further interviews with the judge's summaries thereof. The problems which we have described occurred repeatedly and demonstrate beyond question the impracticality of this unwise innovation to our *voir dire* practice.

The State contends, nonetheless, that the procedure employed by the judge should receive our support. It relies on the absence of any New Jersey case specifically holding the practice illegal and it argues that the procedure was sufficiently fair because defendant's counsel was present in the courtroom during the interviews, could observe the interviews taking place, and received a summary from the judge as soon as each interview was concluded. The State further notes that only one of the jurors who was questioned at sidebar, Mr. Peacock, actually deliberated on the case, and claims that the defendant has failed to demonstrate that he was actually prejudiced by either the sidebar interview procedure or the presence of Mr. Peacock on the final jury. The State concludes by arguing that there having been no objection below, if there was error, it should not receive recognition under the plain error rule. *R.* 2:10–2. We disagree.

In *State v. McCombs, supra,* the defendant on the day of trial rejected his assigned counsel and refused to represent himself. The trial court proceeded with jury selection in the absence of counsel and without defendant's participation. Although the trial court thereafter directed the public defender to take over the defense, the Court reversed the judgment of conviction because of the absence of representation by counsel during the *voir dire*. The Court said:

The [State's] argument, with its implication that "actual prejudice" must be shown before the absence of representation rises to the level of a fatal defect in the criminal proceeding, inferentially denigrates the importance we have attached to the role of counsel, particularly in the process of choosing jurors. Recently this Court characterized jury selection as "an integral part of the process to which every criminal defendant is entitled."

\* \* \*

[I]t is now unmistakably clear that defendant need not show he was prejudiced by the absence of counsel. . . .

[81 *N.J.* at 375–76, 408 *A.2d* 425 (citations omitted).]

In *State v. Wagner*, 180 *N.J.Super.* 564, 435 *A.*2d 1190 (App.Div. 1981), the trial court violated jury selection procedures set forth in the governing statute by placing the first fourteen jurors who walked into the courtroom into the box. As jurors were excused, the trial court selected replacements by starting at one point in the courtroom and proceeding down each row. In reversing the conviction based on that error, Justice (then Judge) Coleman had this to say:

It is vital that juries be selected in a manner wholly free from taint and suspicion. To that end the pertinent practice safeguards in the statute [then *N.J.S.A.* 2A:74–1, now *N.J.S.A.* 2B:23–2] must be carefully observed. There are times, even in the absence of prejudice to a defendant, when it is essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle that courts should not hesitate to reverse.

\* \* \*

While it is true defense counsel did not object to the jury selection procedure, it must be emphasized that the chief responsibility for conducting jury selection rests with the trial judge. It is also true that defendants have been unable to demonstrate prejudice stemming from the jury selection procedure. When the integrity of the process is at stake, prejudice is not a precondition to successfully asserting impairment of the fundamental right of proper jury selection.

[*Id.* at 567, 435 *A.*2d 1190 (citations omitted).]

Although neither the applicable statute, *N.J.S.A.* 2B:23–10, *supra*, nor the rule, *R.* 1:8–3(a), *supra*, expressly prohibit the irregular practice adopted by the trial judge here, it is obvious that the practice is inconsistent with both statute and rule. The statute requires that questioning be conducted in open court; and the rule provides that jurors shall be interrogated in the box. While a juror may be interrogated at sidebar for limited purposes pursuant to *State v. Kamienski*, *supra*, counsel's presence at sidebar is expressly required by that case. The rule also provides

that the attorneys may supplement the court's interrogation, a task which obviously can only be undertaken rationally if the attorney has heard the court's questioning.

When the statute and rule violations are considered in light of the prohibition contained in *Wright v. Bernstein, supra,* against *ex parte* communication by a judge with a juror and the declaration in *State v. Biegenwald, supra,* that the purpose of *voir dire* is to provide not only the court but also counsel with an opportunity to assess the prospective juror's demeanor, there can be no doubt that conducting sidebar questioning of a juror—while the defense attorney remains at counsel table, unable to hear and unable to gauge the juror's reactions—constitutes a denial of defendant's right to the effective assistance of counsel and is inconsistent with the import of the Court's decision in *State v. McCombs, supra. Cf. United States v. Alessandrello,* 637 *F.*2d 131, 134–44 (3rd Cir.1980), *cert. denied,* 451 *U.S.* 949, 101 *S.Ct.* 2031, 68 *L. Ed.*2d 334 (1981); *Robinson v. United States,* 448 *A.*2d 853, 855–56 (D.C.1982); *People v. Antommarchi,* 80 *N.Y.*2d 247, 590 *N.Y.S.*2d 33, 34–35, 604 *N.E.*2d 95, 96–97 (1992).

Reversed and remanded for a new trial.