875 A.2d 882 (2005)
184 N.J. 45
STATE of New Jersey, Plaintiff-Respondent,
v.
W.A., Defendant-Appellant.
Supreme Court of New Jersey.
Argued March 29, 2005.
Decided June 21, 2005.
*884 Jeffrey B. Steinfeld, Hackensack, argued the cause for appellant (Rem Zeller, attorneys).
John J. Scaliti, Assistant Prosecutor, argued the cause for respondent (John L. Molinelli, Bergen County Prosecutor, attorney).
Justice LONG delivered the Opinion of the Court.
Every criminal defendant has the right of presence at his own trial, including jury selection. The specific question before us is whether that right incorporates an entitlement to attend sidebar conferences held during jury selection. The answer is that, under Rule 3:16, a defendant, who requests it, ordinarily has a right of presence at voir dire sidebar conferences. However, that right is not absolute, and where security issues are implicated, a court may utilize other methods to secure a defendant's meaningful participation in voir dire, including technology, the modified struck-jury system, and, as a last resort, the "lawyer-shuttle" process.

I
Defendant, W.A., was charged by indictment with second degree sexual assault and second degree endangering the welfare of a child in connection with an incident *885 involving his nine-year-old daughter. The facts of that incident have no relevance to the procedural issue before us, and they therefore need not be recounted in detail.[1]
In terms of procedure, the first day of trial began with defense counsel's motions in limine. During the motions, the judge asked if defense counsel had ever tried a case in his courtroom. (The judge apparently knew the prosecutor from other trials.) The following exchange occurred:
THE COURT: I don't think you've ever tried a case before me, Mr. Daly. Is that correct?
MR. DALY [defense counsel]: Excuse me, Judge?
THE COURT: You have never tried a case before me.
MR. DALY: No. I have not tried a case before you, Judge.
THE COURT: So we do  I do little sidebars here by the microphone. There is  they're under  they're recorded, of course. All sidebars are. Every once in a while I get the request to have the defendant go up to the sidebar. I don't think that's appropriate, and I don't think that's fair to anyone as far as the jurors. I would assume that is or is not your request to have the  your client present at sidebars?
MR. DALY: Judge, there are a number of other  just a few more things that prior to picking the jury I do want to make in limine.
The issue of defendant's appearance at sidebar was not raised again.
The judge's opening remarks during voir dire contained the following:
It is important to recognize any biases, prejudice, fixed opinions, or views that may have an effect on your ability to be fair and impartial as a juror. And I'll ask you to please let me know that at sidebar.
For any reason, if the questions I am asking you do not cover what you think may be a bias or a prejudice or make it impossible and improper for you to serve, please let me know that also at a sidebar. If you cannot listen to the evidence with an open mind and be fair and impartial, it's important that you let that  you let me know that information, once again, at a sidebar.
Fifty-one of the eighty-six potential jurors seated and examined during voir dire participated in sidebar conferences in response to that opening explanation. Based on videotapes, it appears that defense counsel went to the judge's bench and remained there for the entire duration of each sidebar conference.
Potential jurors were excused for cause at sidebar because they indicated that they: could not be impartial (twenty-five jurors); had scheduled engagements that could not be altered (seven jurors); had problems hearing or understanding English (three jurors); or knew someone connected to the case (two jurors). (The causes for the sidebar excusal of nine other jurors are unclear because of the videotapes' poor quality.) Five jurors returned to the jury box from sidebar. Of those five, two deliberated, two were struck by the State, and one was struck by the defendant.
One of the jurors who was eventually seated was questioned at sidebar because *886 she expressed reservations about sitting on the case. In response to the judge's open court question to her, "Any reason you could not serve as a juror in this case based upon any of the questions?", juror number eleven, Victoria Li, told the judge that she "[did] have some concerns." At sidebar, Li stated that she had practiced law and might be biased due to her prior work with children:
THE COURT: Yes.
MS. LI: I don't currently practice law, but when I did I was a Law Guardian, Juvenile Division, Bronx County Court. So while I'd like to think I can be impartial, I still have a strong sense of [being a] children's advocate.
THE COURT: Okay. Do you think you can be fair and impartial?
MS. LI: The same way, my thoughts, my tendencies are to think of myself as representing a child and to advance that so....
THE COURT: You don't practice law.
MS. LI: I'm sorry?
THE COURT: You don't 
MS. LI: Not now. No.
THE COURT: What type of work do you do?
MS. LI: (Indiscernible) educational publishing.
THE COURT: And your last name is L-I?
MS. LI: Correct.
THE COURT: I thought they left off a letter for some reason.
MS. LI: No.
THE COURT: It's just L-I.
MS. LI: No. It's just L-I.
THE COURT: Okay. Either attorney have a question of this juror?
PROSECUTION: No.
DEFENSE: (Indiscernible).
Ms. LI: (Indiscernible).
DEFENSE: (Indiscernible).
MS. LI: Children in civil (indiscernible) cases as well as (indiscernible).
DEFENSE: (Indiscernible).
MS. LI: Correct. In Family Court (indiscernible).
DEFENSE: (Indiscernible).
THE COURT: Ms. Li, would you be able to apply the law as I instruct you?
MS. LI: Yes, I think so.
THE COURT: Okay. You can return to your seat. That's correct.
Neither side moved to strike Li although defense counsel had all of his peremptory challenges remaining. Because the court camera was not focused on counsel table, the videotape does not reveal what occurred between defendant and counsel after Li's sidebar voir dire ended. The camera does reveal, however, that 1) it took defense counsel nine seconds to get to Li's sidebar; and, 2) defense counsel had, at most, thirteen seconds after the sidebar ended to return to counsel table and consult with defendant before open court questioning of Li continued. It appears, therefore, that defense counsel had only four seconds, and thus, no real opportunity, to consult with the defendant.
Defendant was convicted of second degree sexual assault and acquitted of the endangering count. He was sentenced to a custodial term of six years. Appropriate fines and penalties were also imposed, and defendant will be subject to the requirements of Megan's Law. See N.J.S.A. 2C:7-2.
Defendant appealed and the Appellate Division affirmed. On the only issue before us, defendant's claimed entitlement to participate in sidebars during voir dire, the panel noted that defendant had the right to be present at all stages of his trial including voir dire but, because he "[did] *887 not make a specific request to be present at sidebar during voir dire," he waived that right. In addition, the court held that defendant was precluded from making the argument on appeal because of his failure to object to the judge's preemptive ruling. Further, the panel cited our recent decision in State v. Davenport, holding that "a defendant's physical presence at sidebar conferences is not an absolute requirement in order to comport with the Faretta self-representation right, so long as the exclusion does not deprive the defendant of meaningful participation in the content of the sidebars through his standby counsel representative."[2] 177 N.J. 288, 309, 827 A.2d 1063 (2003). We granted defendant's petition for certification on the sole issue of his right to participate in voir dire sidebars. 182 N.J. 150, 862 A.2d 58 (2004).

II
Defendant argues that his fundamental entitlement to be present at all stages of his trial was abridged by the trial judge's prohibition against his presence at sidebar; that prior case law recognizes that right; and that he was not required to make a futile application to be present after the judge had preemptively denied that right.
The State counters that because defendant did not request to be present at sidebar during voir dire, he waived that claim and that, in any event, defendant has no right to be present under our case law.

III
Every criminal defendant has the right of presence at his own trial. As we explained in State v. Whaley, 168 N.J. 94, 99-100, 773 A.2d 61 (2001):
The United States and New Jersey Constitutions guarantee criminal defendants the right to confront witnesses against them. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. An essential element of that guarantee is the right of the accused to be present in the courtroom at every stage of the trial. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970) (citing Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)); State v. Hudson, 119 N.J. 165, 171, 574 A.2d 434 (1990); State v. Smith, 29 N.J. 561, 578, 150 A.2d 769, cert. denied, 361 U.S. 861, 80 S.Ct. 120, 4 L.Ed.2d 103 (1959). A criminal defendant's right to be present at trial also is a condition of the Due Process Clause of the Fourteenth Amendment to the extent that a defendant's absence would hinder a fair and just hearing. Hudson, supra, 119 N.J. at 171, 574 A.2d 434 (citing Snyder v. Massachusetts, 291 U.S. 97, 107-08, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934), overruled on other grounds, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)).
More particularly, we have noted that a defendant's presence
provides protections on both an individual and institutional level. It affords a defendant the ability to communicate with counsel during trial, assist in presentation of a defense, and in the process of cross-examination.... Institutionally, the defendant's right to be present at trial ensures public confidence in the courts as instruments of justice.
[State v. Hudson, supra, 119 N.J. at 172, 574 A.2d 434 (1990) (internal citations omitted).]
Rule 3:16(b) codifies that entitlement:
The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, *888 unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgment of the trial date, or (2) trial has commenced in defendant's presence.
As the rule reveals, the right of presence includes jury selection. See State v. Smith, 346 N.J.Super. 233, 236-37, 787 A.2d 276 (App.Div.2002) (citing State v. Dishon, 297 N.J.Super. 254, 687 A.2d 1074 (App.Div.), certif. denied, 149 N.J. 144, 693 A.2d 112 (1997)); State v. Lomax, 311 N.J.Super. 48, 709 A.2d 277 (App.Div.1998)). Indeed, jury selection is "an integral part of the process to which every criminal defendant is entitled." State v. Brunson, 101 N.J. 132, 138, 501 A.2d 145 (1985) (quoting State v. Singletary, 80 N.J. 55, 62, 402 A.2d 203 (1979)); see also United States v. Ford, 824 F.2d 1430, 1435 (5th Cir.1987)(en banc) (stating jury selection is "an essential instrument to the delivery of a defendant's constitutionally secured right to a jury trial").
The jury selection process is made up of distinct parts that include the challenge for cause (Rule 1:8-3(b)) and the peremptory challenge (Rule 1:8-3(d)). Challenges for cause "permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality...." Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772, rev'd on other grounds, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Peremptory challenges generally
require[] neither explanation nor approval by the court. It is intended that each party will use peremptory challenges to remove those prospective jurors who appear most likely to be biased against him or in favor of his opponent; by so doing, it is hoped the extremes of potential prejudice on both sides will be eliminated, leaving a jury as impartial as can be obtained from the venire.
[Brunson, supra, 101 N.J. at 138, 501 A.2d 145 (citations omitted).][3]
Although interrelated, the two classes of challenge are actually quite distinct. Because the challenge for cause involves proof of legally cognizable grounds, it can be fairly characterized as within the attorney's field of expertise. On the contrary, it is the defendant himself who plays the critical role in exercising the peremptory challenge.
It is difficult to articulate what constitutes the basis prompting an exercise of peremptory challenge. But, it is precisely the vagueness of an impression or intuitive feeling, or the desire "to express an arbitrary preference," Frazier, supra, 335 U.S. at 506, 69 S.Ct. at 206, which serves to illustrate the need for the defendant to be present when a prospective juror is being examined so that his impressions may be gained first hand. See Robinson, supra, 448 A.2d at 855; Washington, supra, 227 U.S.App. D.C. at 192, 705 F.2d at 497. Surely, just as it is difficult to articulate what *889 induces the exercise of a peremptory challenge, it is improbable to expect a lawyer to be able to relate those impressions gained at the bench to his client. Each impression is, at bottom, a personal one.
[Boone v. United States, 483 A.2d 1135 (D.C.1984).]
Indeed, it is that undefinable frisson either of comfort or unease that passes from one person to another that is the essence of the peremptory challenge and that is a crucial rationale for affording a defendant the right to be present at the questioning of potential jurors.
Although peremptory challenges have never been held to be required by the Federal Constitution, they have been recognized as an important part of the jury selection process. See, e.g., Swain v. Alabama, supra, 380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772 (stating that function of peremptory challenge is "to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise"); Frazier v. United States, 335 U.S. 497, 506, 69 S.Ct. 201, 206, 93 L.Ed. 187, 196 (1948) (stating peremptory challenges afford criminal defendants "an opportunity beyond the minimum requirements of fair selection"); Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208, 214 (1894) (characterizing the peremptory challenge as "important").
In Brunson, supra, 101 N.J. at 136-37, 501 A.2d 145, we detailed the history of the peremptory challenge, underscoring its "deep historic roots[,]" and in Singletary, supra, 80 N.J. at 62, 402 A.2d 203, we stated:
Were we of the view that the trial judge had in fact erroneously deprived defendant of a peremptory challenge, his contentions in this regard would merit serious consideration by this Court. Jury selection is an integral part of the process to which every criminal defendant is entitled. Although not constitutionally required to do so, the Legislature and this Court have sought to insure that the triers of fact will be nearly as impartial as the lot of humanity will admit by providing defense counsel with twenty peremptory challenges. As such, the denial of the right of peremptory challenge is the denial of a substantial right.

[(Internal brackets, citations, and quotation marks omitted).]
To be sure, our scheme of peremptory challenges has recently been the subject of some judicial criticism. See Miller-El v. Dretke, ___ U.S. ___, 125 S.Ct. 2317, ___ L.Ed.2d ___ (2005) ("peremptory challenges seem increasingly anomalous in our judicial system") (Breyer, J., concurring); see also Raymond J. Broderick, Why the Peremptory Challenge Should Be Abolished, 65 Temp. L.Rev. 369 (1992); Morris B. Hoffman, Peremptory Challenges Should Be Abolished: A Trial Judge's Perspective, 64 U. Chi. L.Rev. 809 (1997). Nevertheless, it is against the backdrop of a scheme that allows peremptory challenges that this case must be decided.

IV
We turn first to the substantive issue of a defendant's right to be present at voir dire sidebars. Although both parties argue that prior New Jersey case law resolves the issue of a defendant's entitlement to such presence at sidebar, our jurisprudence, although helpful, is not dispositive of the issue. In Lomax, supra, the Appellate Division ruled that the defendant was deprived of his right to counsel "during voir dire when the trial judge interviewed prospective jurors at sidebar while his attorney and the prosecutor remained *890 at counsel table." 311 N.J.Super. at 50, 709 A.2d 277 (emphasis added). There, after the sidebars, the judge excused some jurors and returned others to their seats, subsequently discussing the sidebar interviews with counsel "with varying degrees of accuracy."[4]Id. at 51, 709 A.2d 277. There was no objection to the attorneys' exclusion from sidebar. Ibid.
The State argued that no New Jersey case barred the trial court's method of voir dire and that there was no showing of actual prejudice, in part because only one of the jurors interviewed at sidebar was seated. Id. at 55, 709 A.2d 277. The Appellate Division disagreed, holding that the exclusion constituted "plain error" and awarded the defendant a new trial, ruling that "there can be no doubt that conducting sidebar questioning of a juror  while the defense attorney remains at counsel table, unable to hear and unable to gauge the juror's reactions  constitutes a denial of defendant's right to the effective assistance of counsel...." Id. at 57, 709 A.2d 277.
Subsequently, in a parenthetical in State v. Smith, 346 N.J.Super. 233, 236, 787 A.2d 276 (App.Div.2002), Lomax was interpreted as holding that "defendant had [a] right to be present when [the] trial judge interviewed prospective jurors at sidebar[.]" That is not the holding of Lomax, however. The actual holding is that defense counsel must be present at sidebar voir dire, not that that right attaches directly to defendant's person. Moreover, we note that the Appellate Division's opinion in Smith, supra, addressed the quite distinct situation in which the entire jury selection process was conducted without defendant because of a schedule change due to bad weather. 346 N.J.Super. at 235-36, 787 A.2d 276.
Dishon, supra, although not directly on point, is closer to the mark. Dishon involved what police believed was a "homosexually related" homicide in which the victim was stabbed thirty-six times. During trial, a witness noted that the defendant, who always carried a knife, liked to rob homosexuals; he referred to them as "`faggots'" and thought they should all be dead. 297 N.J.Super. at 263, 687 A.2d 1074. At voir dire, the judge conducted sidebars, in the presence of counsel, addressing the general question of whether the fact that homosexuality was involved would keep potential jurors from reaching a fair verdict. Id. at 265-66, 687 A.2d 1074. After defense counsel had exhausted all peremptory challenges, the judge "announced that he would bring the jurors into his chambers one at a time so that he could ask them some additional questions in the presence of counsel and the court reporter." Id. at 266, 687 A.2d 1074. When the defendant's attorney requested that the defendant be present, "[t]he judge denied the request for `reasons of security,' but asked defense counsel to relay to defendant what was said by each juror." Id. at 266, 687 A.2d 1074.
In chambers, the judge conducted individual queries of jurors, delving deeply into their views and potential biases regarding homosexuality. Id. at 266-67, 687 A.2d 1074. Not one of the jurors examined in chambers was challenged, although one juror indicated that he was a homosexual, and another, that he was "`not sympathetic at all with homosexuality....'" *891 Each said he could be fair. Id. at 267, 687 A.2d 1074. Both of those men deliberated on the case and the defendant was convicted. Ibid.
In reversing, the Appellate Division reiterated that a criminal defendant has a right to be present at every critical stage of his or her trial, including the impaneling of the jury, id. at 267, 687 A.2d 1074, and that "[t]his fundamental right to be present during voir dire is essential because it is only by defendant's presence during jury impaneling that he can assist his attorney in the selection of an impartial jury." Id. at 268, 687 A.2d 1074.
The panel noted that the defendant is entitled to see a potential juror's responses to questions for himself to better determine possible biases. Dishon, supra, 297 N.J.Super. at 268, 687 A.2d 1074. According to the court, without being present for voir dire, a defendant cannot properly utilize his peremptory challenges. Ibid. Because homosexuality was at the heart of the case, the jurors' attitudes regarding that subject were pivotal. Id. at 269-70, 687 A.2d 1074. That is what made it "important that defendant be present so that he could form his own impressions of the jurors' demeanor and visceral reactions when they responded to the questions about homosexuality." Ibid. The court thus concluded that the defendant's exclusion from the voir dire violated Rule 3:16(b). Ibid.
Although Dishon is close to the situation in the current case, it is not on all fours, as the Appellate Division here explicitly made clear. 297 N.J.Super. at 270 n.7, 687 A.2d 1074. Indeed, Dishon noted that it "expressly" refused to reach what is now squarely before us, "the question whether a defendant's rights are violated when a limited voir dire of a juror is conducted at side-bar in counsel's presence." Ibid.
We answer that question here: by its terms, Rule 3:16 provides a defendant with the right of presence at every stage of his trial, including sidebar conferences during jury selection. It is important to recognize, however, that presence at sidebar need not always mean physical presence. We take our lead from Davenport, supra, where we faced the issue of whether a pro se defendant's actual presence at sidebar is necessary to satisfy his Faretta rights regarding self-representation. In Davenport, defendant, a "drug kingpin", was charged with numerous offenses, including violent ones, and was facing life in prison, thus raising legitimate security concerns that the judge discussed with the defendant. 177 N.J. at 304, 827 A.2d 1063. The judge informed the defendant without discussion, "You will not be allowed at side bar[,]" id. at 296, 827 A.2d 1063, because "security comes first...." Id. at 313, 827 A.2d 1063. He gave defendant two options: "[I]f there's anything that has to be said outside the presence of the jury, we'll either have to let the jury go into the jury room or you can mention it to [standby counsel] who can speak to me and he would relay a message." Id. at 296, 827 A.2d 1063.
The Appellate Division affirmed the conviction, as did we. Id. at 310, 827 A.2d 1063. In so doing, we approved the trial judge's procedure for Faretta purposes in light of the valid security concerns the case presented, but held, nevertheless, that
trial courts that confront this issue in the future should explore every avenue to ensure that defendants can participate in sidebars to the fullest extent possible without compromising courtroom security. This may be accomplished in appropriate circumstances through defendant's physical presence at sidebar when safety is not a concern, through minimal use of standby counsel as a conduit, by sending the jury to the *892 jury room and having the discussion in open court (as was done on several occasions here), or even through advances in courtroom technology. See e.g., State v. Cook, 330 N.J.Super. 395, 415, 750 A.2d 91 (App.Div.), certif. denied, 165 N.J. 486, 758 A.2d 646 (2000) (explaining that defendant who was not permitted to be physically present at sidebars "was given use of a wireless listening device whereby he could sit at counsel table" and listen to what was being discussed at sidebar). In circumstances in which trial courts determine that defendants should not be allowed at sidebar, we expect that the legitimate security concerns that necessitate such a finding will be detailed clearly on the record.
[Id. at 309-10, 827 A.2d 1063.]
Although Davenport is a self-representation case and this case involves the right of presence, we think the path that Davenport described is an equally appropriate route for our resolution here.
If a defendant seeks to be present at sidebar during voir dire he should be accommodated as far as security will allow. That means, as Davenport, supra, held, that unless safety is an issue (in which case the judge should clearly state his or her concerns for the record), a defendant should be physically present at sidebar. 177 N.J. at 309-10, 827 A.2d 1063. In the event that safety issues militate against a defendant's physical presence at a voir dire sidebar, other methods should be employed to guarantee his meaningful participation in the jury selection process. Those methods include the use of the technology referred to in Davenport. See also, Cook, supra, 330 N.J.Super. at 415, 750 A.2d 91 (approving use of wireless listening device in lieu of sidebar appearance by potentially dangerous pro se defendant); Dishon, supra, 297 N.J.Super. at 269-70 n.6, 687 A.2d 1074 (dismissing judge's security concerns as reason for excluding defendant from voir dire in chambers because "the right to be present can be satisfied by various means including use of close-circuit television"); Muhammad v. State, 782 So.2d 343, 353 n.5 (Fla.) (noting that defendant, equipped with headphones and clear view of jurors at sidebar, can be present "in a meaningful and realistic way"), cert. denied, 534 U.S. 944, 122 S.Ct. 323, 151 L. Ed.2d 241 (2001).
Another possibility to ensure the defendant's presence and the safety of potential jurors would be a modified use of the struck-jury system. See State v. Dixon, 125 N.J. 223, 245-46, 593 A.2d 266 (1991) (explaining "struck-jury system" in which all jurors are individually questioned in open court with defendant present while all other jurors are absent). In a struck-jury system, a defendant can remain in his seat during individual voir dire because all but one potential juror would be outside the courtroom. In this case, the struck-jury modality could have been utilized in a limited fashion in connection with jurors who expressed a desire to speak at sidebar. Their inquiries could have been reserved for a recess at which they could have been questioned individually in open court.
If all of those methods are unavailable (for example, when there are legitimate security concerns, no electronic means are immediately accessible, and the juror is unwilling to speak in open court), the judge may resort to the lawyer-shuttle system. Under that system, the lawyer who attends each sidebar thereafter consults with his client regarding what has transpired, thus allowing the client to seek further probing or to acquiesce in the lawyer's recommendation. Because that method interposes the lawyer between the client and the juror, it is not as effective for peremptory challenge purposes as the *893 direct observation-hearing methods. Nevertheless, it is a potential way to secure a defendant's "presence" and participation in voir dire when direct participation is impractical.
It bears repeating that when the lawyer-shuttle system is used, the lawyer must confer with his client after each sidebar interview that involves more than innocuous scheduling-type matters. In addition, if the lawyer-shuttle system is employed and a defendant so requests, the judge should take a recess before defendant's peremptory challenges are exercised to allow him to listen to the tape or review the court stenographer's notes of the sidebar colloquy with the non-excused jurors. By that approach, we balance the court's interest in security, the juror's in privacy, and the defendant's in presence.
Our ruling dovetails with the approach taken by other courts that have recognized the right of presence in their respective procedural and court rules whose language is quite similar to ours. See, e.g., United States v. Cuchet, 197 F.3d 1318, 1320 (11th Cir.1999) ("[c]onsidering the plain language of [Federal Rule of Criminal Procedure 43(a),] in the light of [the defendant's] specific request to be present and the absence of unusual circumstances in this case which would make [defendant's] presence infeasible, the trial court probably should have allowed [defendant's]... presen[ce] [at sidebar]"); Muhammad, supra, 782 So.2d at 353 (stating that prior decision requiring defendant's presence at sidebar voir dire "was based on [an] interpretation of [Florida Rules of Criminal Procedure 3.180(a)(4)] ... to be present at bench conference when peremptory challenges are exercised"); Boone, supra, 483 A.2d at 1136-37 ("[D.C. Superior Court Criminal Rule 43(a)] requires a defendant to be permitted to participate at that portion of the voir dire conducted at the bench").[5]

V
Our substantive ruling implicates several procedural issues. We first address whether a defendant must affirmatively assert a right to sidebar presence or be deemed to have waived it.

A.
The majority of federal courts that have specifically addressed the sidebar presence issue are aligned with the view that failure to assert the right constitutes a waiver. See Cardinal v. Gorczyk, 81 F.3d 18, 20 (2d Cir.1996) ("[defendant] waived his Sixth Amendment right to observe the individual voir dire by failing to assert that right"); United States v. Sherwood, 98 F.3d 402, 407 (9th Cir.1996) ("[a]lthough a defendant charged with a felony has a fundamental right to be present during voir dire, this right may be waived... by failing to indicate to the district court that [defendant] wished to be present at side bar"); United States v. Washington, 705 F.2d 489, 497 (D.C.Cir.1983) ("because it is a right infrequently exercised and usually delegated to counsel, unless a specific request is made for the defendant to participate at bench examinations of prospective jurors, such right shall be deemed to have been waived").
*894 Most states (and the District of Columbia) addressing the issue agree. See, e.g., Lay v. United States, 831 A.2d 1015, 1021 (D.C.2003)("failure either to request that [defendant] be present during the portions of the proceedings which took place in his absence or to object to his exclusion therefrom constitutes a waiver of that right and forecloses the opportunity to be heard on appeal") (quotation marks omitted); State v. Hubbard, 48 P.3d 953, 965 (Utah 2002) ("defendant waived any right he had to be present at sidebar during voir dire of prospective jurors by failing to assert it"); Muhammad, supra, 782 So.2d at 353 (concluding that no "reversible error occurred" when defendant, who did not object to absence from sidebar examination of jurors, "ratified the procedure and accepted the jury"); Commonwealth v. Perry, 733 N.E.2d at 83, 103 (Mass.2000)(holding defendant's right of presence at sidebar voir dire waived where no request or objection made at trial); Williams v. State, 292 Md. 201, 438 A.2d 1301, 1310 (1981) ("if the defendant himself does not affirmatively ask to be present at [voir dire sidebars] or does not express an objection at the time, and if his attorney consents to his absence or says nothing regarding the matter, the right to be present will be deemed to have been waived").
Only New York has taken a different view. The New York courts have ruled that express waiver of the right to attend voir dire sidebars is necessary. People v. Antommarchi, 80 N.Y.2d 247, 590 N.Y.S.2d 33, 604 N.E.2d 95, 97 (1992) ("failure to object to being excluded" would not be fatal to defendant's claim).
We think the majority view makes sense  a defendant who does not affirmatively request the right to participate in voir dire sidebars should be considered to have waived the right; and we so hold. See Dishon, supra, 297 N.J.Super. at 270 n.7, 687 A.2d 1074 (holding that defendant's right to be present during in camera voir dire "is predicated on the fact that he specifically asked to be present during the proceeding").

B.
We next address whether a defendant's exclusion from sidebar, after having requested presence, and in the absence of a substituted process such as the use of technology, automatically warrants reversal. We hold that it does not and that each case is subject to a harmless error analysis. Thus, for example, "A court may conduct side-bar discussions with prospective jurors in a defendant's absence if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments." Antommarchi, supra, 590 N.Y.S.2d 33, 604 N.E.2d at 97.
Likewise, a defendant's absence from the sidebar examination of a juror who does not deliberate in the case is necessarily harmless. "When a prospective juror is disqualified by the court for cause, any benefit defendant could possibly claim from his presence at that excuse for cause hearing would have been but a shadow and purely speculative. Therefore, [a] defendant's absence from that hearing does not require reversal." People v. Roman, 88 N.Y.2d 18, 643 N.Y.S.2d 10, 665 N.E.2d 1050, 1055 (1996) (citations and quotation marks omitted). The same applies where the prosecution uses a peremptory challenge to remove a potential juror. Id. at 1055-56.
Invocation of the ... right to be present will be rejected... when the claim that a defendant's presence would have had an impact on the outcome of the trial is speculative, or the violation of the statute is de minimis ... [or] when, either because of the nature of the particular *895 proceeding or its ultimate outcome, the defendant's presence was useless, or the benefit but a shadow. That is, a reversal is not required when, because of the matter then at issue before the court or the practical result of the determination of that matter, the defendant's presence could not have afforded him or her any meaningful opportunity to affect the outcome.
[Id. at 1054 (internal citations and quotation marks omitted).]
The situation is different where the exchange that occurs at a sidebar from which defendant is excluded involves a matter of substance and the juror has been seated. Thus, for example, as in Dishon, supra, if a criminal case involves a hate crime against a homosexual, and the judge takes up a juror's views on homosexuality at a sidebar from which defendant is excluded, the error will be held to be harmful because the attitudes of the jurors toward homosexuals and homosexuality, though perhaps an inadequate basis for an excusal for cause, might well be the source of the exercise of a peremptory challenge by defendant. In other words, reversal will not be automatic but will depend on the facts.

VI
We turn finally to this case. The Appellate Division ruled that, because no request was made by defendant, his claim that he had a right to attend voir dire sidebars was waived. What actually occurred was the following: the trial judge peremptorily declared, at the inception of the case, that under procedures applicable in his court, defendant would not be allowed at sidebar. In ruling, he explained his reason: "Every once in a while, I get the request to have defendant go up to the sidebar. I don't think that's appropriate... [or] fair to anyone as far as the jurors." In our view, and as a matter of common sense, that preemptive ruling by the judge rendered a further request for sidebar presence by defendant unnecessary. Thus, we disagree with the Appellate Division's conclusion that, on the facts of this case, defendant waived his right to such presence.
However, we do agree with the Appellate Division that defense counsel should have objected to the trial judge's ruling. Indeed, Rule 1:7-2 provides:
For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefore. Except as otherwise provided by R. 1:7-5 and R. 2:10-2 (plain error), no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict, but opportunity shall be given to make the objection in open court, in the absence of the jury. A party shall only be prejudiced by the absence of an objection if there was an opportunity to object to a ruling, order or charge.
Rule 2:10-2 in turn prescribes:
Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.
At issue then, is whether the trial judge's refusal to allow defendant to be present at sidebar or to provide some alternative method of participation was *896 clearly capable of producing an unjust result. We think that it was. Li expressed concerns about serving because she had previously practiced law and worked with children. More particularly, she had been a Juvenile Law Guardian. It was she who identified the issue as problematic. As she put it, "[W]hile I'd like to think I can be impartial, I still have a strong sense of [being a] children's advocate." In answer to the question, "Do you think you can be fair and impartial?[,]" it is important to note that Li never said "yes." Rather, she responded with the same concern over bias that precipitated her original reservation: "The same way, my thoughts, my tendencies are to think of myself as representing a child and to advance that so...." The question regarding the juror's fairness and impartiality was never pursued by the judge. To be sure, ultimately, Li said, "I think so[,]" when she was asked if she could follow the judge's instructions in applying the law. But that is quite distinct from answering whether she could be fair and impartial. A juror with a prejudice may faithfully apply the law to facts and yet still be an inappropriate adjudicator because her evaluations of credibility are colored by her predisposition.
Frankly, given Li's answers, it is arguable that she could have been excused for cause. Even if not, it is certainly fair to say that a defendant charged with sexual crimes against a nine-year-old girl, who knew of Li's background and of the answers she gave, would be loath to allow her to serve on his jury.
In this case, defendant was not allowed at sidebar; no electronic means were made available to allow him to access the sidebar process, and, as far as the videotapes reveal, defense counsel did not confer with him after the colloquy involving Li. Because Li's view of herself as a child victims' advocate went to the heart of the issue in this case, defendant may well have peremptorily challenged her had he heard her responses. Therefore, the process that led to her service was necessarily harmful error. R. 2:10-2.

VII
The judgment of the Appellate Division is reversed. The matter is remanded for a retrial in accordance with the principles to which we have adverted.
Justice RIVERA-SOTO, concurring in part and dissenting in part.
Save for the conclusions expressed in Part VI of the Court's opinion, ante, 184 N.J. at 65, 875 A.2d at 895, I concur with the thoughtful and thorough analysis presented by Justice Long. With respect to the Court's dual conclusion that defendant did not waive the right to be present at sidebar and that defendant's failure to object to the trial court's preference that parties not participate in sidebar discussions, which permits the application of the principles we today announce to this case, I must part company with the majority. In my view, the Appellate Division correctly concluded that defendant W.A. waived his right to be present at sidebar during the individual voir dire of jurors at his child sexual assault trial and, hence, in the context of this case, we need not address whether any objections should have been interposed or whether the absence of that objection was "clearly capable of producing an unjust result...." R. 2:10-2.
The entire colloquy between the trial court and defendant's counsel on this issue is described by the Court, ante, 184 N.J. at 49-50, 875 A.2d at 885, and need not be repeated here. What does bear repetition is this: defendant neither requested leave to attend the individual voir dire of jurors conducted at sidebar, nor objected to the trial court's stated *897 preference concerning a defendant's presence at sidebar during the individual voir dire of jurors. Because of that failure, I side with the Appellate Division, which held that
defendant's failure to object to the exclusion from sidebar conferences precludes a challenge on appeal. See United States v. Gagnon, 470 U.S. 522, 528, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985). When a defendant does not make a specific request to be present at sidebar during voir dire, the defendant waives the right to be present. United States v. Sherwood, 98 F.3d 402, 407 (9th Cir.1996); Cardinal v. Gorczyk, 81 F.3d 18, 20 (2d Cir.1996); United States v. Washington, 705 F.2d 489, 497 (D.C.Cir.1983). This is so even when the judge rules that he will not allow an abuse of the attorney voir dire at sidebar. Sherwood, supra, 98 F.3d at 407.
This conclusion is further buttressed by the fact that the sole juror whose questioning is noted by the majority, Ms. Li, was not stricken by either side "although defense counsel had all of his peremptory challenges remaining." Ante, 184 N.J. at 51, 875 A.2d at 886.
I cannot subscribe to a holding that perforce turns able trial counsel into shrinking violets in the face of a trial judge's neutral expression of a preference. At the very least, defense trial counsel  who is in the very best position to gauge the immediate and long-term effects of his actions or failures to act  is required to preserve an issue for appeal by either making a direct request or objecting to the trial court's determination. Because we require pro se defendants to object in order to preserve any real or perceived violation of the right of presence during the sidebar voir dire of individual jurors, see State v. Davenport, 177 N.J. 288, 304-05, 827 A.2d 1063 (2003), we certainly cannot expect less from trial counsel licensed to practice law in this State. Simply said, in these circumstances, defense counsel's unexcused and unexplained failure either to object or make a request in the first instance must foreclose direct appellate relief.
I, therefore, respectfully dissent as to Part VI of the Court's opinion.
For reversal and remandment  Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and WALLACE  6.
For concurrence in part; dissent in part  Justice RIVERA-SOTO  1.
NOTES
[1] For completeness, we note that defendant's nine-year-old daughter was playing naked in the closet with her brother and another boy. When defendant found out, he took her into the bathroom to discipline and "correct her for what she had done[,]" commanded her to disrobe, exposed his penis and asked her, "Do you want to be raped?" Whether the girl touched defendant was the subject of inconsistent testimony at trial.
[2] See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[3] Of course, the exercise of peremptory challenges to exclude potential jurors due to "group stereotypes rooted in, and reflective of, historical prejudice" is impermissible. J.E.B. v. Alabama ex rel T.B., 511 U.S. 127, 128, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89, 97 (1994); see also State v. Fuller, 182 N.J. 174, 862 A.2d 1130 (2004); State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986).
[4] The Appellate Division illustrated "the dangers to due process arising from this irregular procedure" by comparing the record of what actually transpired at the sidebar conferences with the distorted recitation of them given to the attorneys. Lomax, supra, 311 N.J.Super. at 53-55, 709 A.2d 277. The panel also noted the difficulty in reconstructing what occurred at inaudible sidebar conferences. Id. at 54-55, 709 A.2d 277.
[5] When Cuchet, supra, was decided, Federal Rule of Criminal Procedure 43(a) read: "The defendant shall be present ... at every stage of the trial including the impaneling of the jury ... except as otherwise provided by this rule." When Boone was decided, D.C.'s Superior Court Criminal Rule 43(a) mirrored Federal Rule of Criminal Procedure 43(a). When Muhammad was decided, Florida Rule of Criminal Procedure 3.180(a)(4) provided for the presence of defendant "during the examination, challenging, empaneling, and swearing of the jury."